UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY COLON AS ADMIN. OF THE | : | NO.: 3:21-cv-00175 (KAD) |
| ESTATE OF ANTHONY VEGA-CRUZ | : | |
| | : | |
| v. | : | |
| | : | |
| LAYAU EULIZIER, ET AL | : | JANUARY 16, 2023 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

I.      **FACTUAL BACKGROUND**

The Local Rule 56(a)1 Statement of Undisputed Material Facts is adopted in its entirety and incorporated herein by reference.

II.     **STANDARD OF REVIEW ON SUMMARY JUDGMENT**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "The substantive law governing the case will identify those facts that are material, and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006), quoting Anderson 477 U.S. at 248.

The moving party bears the burden of demonstrating the absence of a genuine issue as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25

(1986).  In determining whether a material issue of fact exists, the Court must resolve all ambiguities and draw all inferences against the moving party.  See Anderson, 477 U.S. at 255.  The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue.  See Celotex, 477 U.S. at 324.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matasushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party seeking summary judgment satisfies their burden of demonstrating that there exists no genuine issue of material fact in dispute where they point to the absence of evidence to support an essential element of the non-moving party's claim.  See Celotex Corp. v. Catrett, 477 U.S. at 322-23.  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must designate specific facts showing that there is a genuine issue for trial."  Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (internal quotation marks omitted), citing Celotex, 477 U.S. at 324.

III.     **SUMMARY JUDGMENT SHOULD ENTER FOR JOHN DOES I-XX**

Plaintiff identified in his Complaint dated October 27, 2020, defendants "John Does I-XX" as placeholder defendants, given that names were not then-known.  See Complaint [Doc 1].  The case has now proceeded through completion of discovery pursuant to this Court's Scheduling Order.  See Scheduling Order [Doc 25].  Plaintiff has not moved to amend the Complaint to name additional parties, and the statute of limitations to add parties on any theory related to the April 20, 2019 incident has expired.  See C.G.S. § 52-577 (three year tort statute of limitations), and § 52-584 (two year negligence statute of limitations with three year statute of repose).  Accordingly, summary judgment should enter as to John Does I-XX.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995).  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994); Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir.1991).  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Shomo v. City of New York, 579 F.3d 176, 184 (2d Cir. 2009)  An amended complaint that seeks to supplement a name of an individual person would not relate back to the date of original filing.  Sepulveda v. City of New York, 56 Fed.R.Serv.3d 1225 (2003).  Any amendment to substitute a named party for a John Doe defendant is not the result of mistake, but rather the result of ignorance of the identity of the defendant at the time the complaint was filed.  Under Rule 15(c)(3), such an amendment does not constitute a "mistake" concerning the identity of the proper party, and therefore it does not relate back to the date of the original complaint. See Barrow v. Wethersfield Police Dept., 66 F.3d 466, 469-70 (2d Cir.1995), *modified*

*on other grounds,* 74 F.3d 1366 (2d Cir.1996) *id.* at 470; see also Lewis v. New York City Police Dept., 99 cv 0952, 2000 LEXIS 69, (S.D.N.Y. Jan. 5, 2000) (citing Barrow and holding that plaintiff's proposed amendments in a Section 1983 case to substitute two named individuals for the John Doe defendant were time barred).

Summary judgment should enter for the John Doe defendants.

## IV.    THE TOWN OF WETHERSFIELD IS NOT DIRECTLY LIABLE FOR INTENTIONAL TORTS, AND CANNOT BE HELD LIABLE FOR INTENTIONAL TORTS COMMITTED BY EMPLOYEES

Case law is clear that a political subdivision of the State shall not be held liable for willful misconduct, which equates to intentional misconduct.  See Pane v. Danbury 267 Conn. 669, 677 (2004) (no municipal liability for intentional tort).  O'Connor v. Town of Wethersfield, 90 Conn. App. 59 (2005) (no municipal liability for intentional tort of municipal employee).  Avoletta v. Torrington, 133 Conn. App. 215, (2012) (municipal immunity applies to intentional torts).

The plaintiff has pled constitutional violations against codefendant Eulizier in Count I, Count II and Count VI, based on conduct plaintiff alleges was willful, wanton, malicious and done with reckless disregard for the rights and safety of the plaintiff's decedent.  See Complaint [Doc. 1] ¶ 45.  In addition, the plaintiff, in Count III, has pled a cause of action for battery against, "all defendants," which would include the Town of Wethersfield.  The tort of battery is an intentional tort.  "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."  (Internal quotation marks omitted.)  Alteiri v. Colasso, 168 Conn. 329, 334 n.3, 362 A.2d 798 (1975), quoting 1 Restatement (Second), supra, § 13.

The Town has no liability under Connecticut law for actions taken by an employee that are willful, malicious, intentional or reckless. C.G.S. § 52-557n(a)(2)(A). The Connecticut Supreme Court "has previously stated that a municipality itself was generally immune from liability for its tortious acts unless the legislature has passed a law abrogating that immunity.  Pane v. City of Danbury, 267 Conn. 669, 677 (2004). There exists no statute in Connecticut Connecticut that authorizes a suit against a municipality for an intentional tort.  In fact, the existing statutory mandate is clear that there shall be no municipal liability for intentional torts.  Under Connecticut law, "willfulness" is synonymous with "intentional."  Bhinder v. Sun Co., 246 Conn. 223, 242 n. 14 (1998) ('While [courts] have attempted to draw definitional [distinctions] between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing.'), quoting Dubay v. Irish, 207 Conn. 518, 533, 542 A.2d 711 (1988) ["Wilful misconduct has been defined as intentional conduct"]; see also Elliott v. City of Waterbury, 245 Conn. 385, 415, 715 A.2d 27 (1998) (legal concepts of wanton, reckless, willful, intentional and malicious conduct indistinguishable); Bauer v. Waste Management of Connecticut, Inc., 239 Conn. 515, 527, 686 A.2d 481 (1996) ('A wilful act is one done intentionally or with reckless disregard of the consequences of one's conduct.').

The statute applicable to suits against Connecticut municipalities specifically exempts municipalities from liability for acts or omissions of its employees that constitute fraud, malice or wilful misconduct.  See C.G.S. § 52-557n(a)(2)(A) ("(2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by:  (A) Acts or omissions of any

employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct").  The foundation of plaintiff's case is that the conduct of co-defendant Eulizier was willful, wanton, malicious and reckless.  Whether that can be proven remains to be seen but **if** proven, then the Town of Wethersfield will have no liability for such acts.  The Town notes that the Constitutional claims in Counts I, II and VI are directed at co-defendant Eulizier and not the Town, and recognizes it may be providing more argument than necessary.  The point of emphasis at this stage is the defendant, Town of Wethersfield, is not liable for any of the claims plaintiff makes in Counts I, II, III or VI. against co-defendant Eulizier, and is not liable for the intentional tort of battery made directly against it in Count III; and is entitled to judgment as a matter of law on those counts.

## V.   THE PLAINTIFF'S CLAIM OF NEGLIGENCE IN COUNT IV IS BARRED BY THE DOCTRINE OF GOVERNMENTAL IMMUNITY

### A.   PLAINTIFF CANNOT SUE A CONNECTICUT MUNICIPALITY FOR COMMON LAW NEGLIGENCE

It is axiomatic that a suit may not proceed against a Connecticut municipality unless a plaintiff proceeds in accordance with a statute that abrogates a municipality's governmental immunity.  Pane v. Danbury, supra; Williams v. New Haven, 243 Conn. 763 (1998).

By proceeding in Count Four with a claim of common law negligence against "all defendants" plaintiff is suing the defendant, Town of Wethersfield, for common law negligence.  The Town is immune from liability for common law claims.  "A municipality itself was generally *immune* from liability for its tortious acts at common law...."  Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 165, 544 A.2d 1185 (1988).

Governmental immunity may, however, be abrogated by statute.  The state legislature possesses the authority to abrogate any governmental immunity that the common law gives to municipalities.  Ryszkiewicz v. New Britain, 193 Conn. 589, 593, 479 A.2d 793 (1984).  "Because it is clear that a municipality enjoys governmental immunity for common-law negligence unless a statute has limited or abrogated that immunity, the plaintiffs cannot prevail.  The plaintiffs do not rely on any such statute, and they have failed to name an agent, officer or employee of the municipality and to invoke indemnification pursuant to [General Statutes] § 7–465.  The doctrine of governmental immunity, therefore, is fatal to their cause of action against the defendant."  Williams v. New Haven, supra, 243 Conn. at 769, 707 A.2d 1251.

Here, the plaintiff has not cited a statute that would authorize a suit directly against the Town of Wethersfield, nor has plaintiff cited a statute that would trigger an indemnification obligation for the actions of a Town employee.  This is fatal to the plaintiff's claim against the Town.  The time for amendments to the Complaint has long since passed, and the statute of limitations would bar the addition of any new claim in any event.  See C.G.S. § 52-577 (three year tort statute of limitations); C.G.S. § 52-584 (two year negligence statute of limitations with three year statute of repose).  There is little question that if the plaintiff sought to add a statutory claim against the Town it would have to stand on its own for relation-back purposes, and could not be considered an amplification of a non-existent common law claim against the Town.  Plaintiff has been on notice for at least 20 years, when the Connecticut Supreme Court decided Williams v. New Haven, supra, that a common law negligence claim against a

Connecticut municipality is not a valid claim and will not be allowed.  Accordingly, judgment should enter for the Town on Count Four.

Even if plaintiff had proceeded under a statute that allowed a negligence claim against a Connecticut municipality, the plaintiff's claim would fail, based on governmental immunity.  "Section 52–557n abrogates the common-law rule of governmental immunity and sets forth the circumstances in which a municipality is liable for damages to person and property.  These circumstances include the negligent acts or omissions of the political subdivision or its employees or agents, negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit and acts which constitute the creation or participation in the creation of a nuisance.  C.G.S. § 52–557n (a).  The section goes on to exclude liability for acts or omissions of any employee or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct and negligent acts that involve the exercise of judgment or discretion.  C.G.S. § 52–557n(a)(2) (A) and (B).

As stated above the Town of Wethersfield will not be liable in Count IV for the acts of co-defendant Eulizier which plaintiff has alleged are willful, wanton, malicious and reckless--such conduct is plead as paragraph 45 of Count IV.  (See Complaint [Doc. 1] ¶ 45.)  The Connecticut legislature, which is the gatekeeper as to all suits against a Connecticut municipality has exempted from liability claims of injury caused by "acts or **omissions** of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct."  See C.G.S. § 52-557n(a)(2)(A) (emphasis added).  The fact that the plaintiff attempts to secure negligence liability based on the alleged willful and malicious conduct of co-defendant Eulizier is of no moment with

respect to municipal liability analysis.  Count IV contains foundation allegations that co-defendant Eulizier was guilty of willful, wanton malicious and reckless misconduct, and therefore the Town of Wethersfield will have no liability for such conduct and is entitled to judgment as a matter of law.

Even if plaintiff had proceeded against the Town of Wethersfield under a statute authorizing municipal liability for negligence of an employee, such claim would be barred by governmental immunity.  This is so whether the conduct of Officer Peter Salvatore, who made the initial traffic stop of plaintiff's decedent, or the Town supervisors is analyzed.

Under Connecticut common law, municipal entities and their employees are provided with immunity from liability for their tortious acts.  See Williams v. City of New Haven, 243 Conn. 763, 766 (1998); Heigl v. Bd. of Ed., 218 Conn. 1, 4 (1991); Ryszkiewicz v. New Britain, 193 Conn. 589, 593 (1994); Burns v. Board of Education, 228 Conn. 640, 645, 638 A.2d 1 (1994); Evon v. Andrews, 211 Conn. 501, 505, 559 A.2d 1131 (1989).  "The issue of governmental immunity is simply a question of the existence of a duty of care, and [the Connecticut Supreme Court] has approved the practice of deciding the issue of governmental immunity as a matter of law."  Doe v. Petersen, 279 Conn. 607, 613, 903 A.2d 191 (Conn. 2006) (internal quotation marks omitted) quoting Gordon v. Bridgeport Housing Auth., 208 Conn. 161, 170, 544 A.2d 1185 (1988).

## B.   THE ACTIONS OF THE TOWN OF WETHERSFIELD ARE PUBLIC DUTIES

The first step in determining the applicability of the doctrine of governmental immunity is to ascertain whether the defendant employees were engaged in a public or private duty.  See Gordon, 208 Conn. at 167-70.  If the duty imposed upon the employee is such that its performance or omission affects an individual in a manner different in kind than the general public, then the action is private in nature, and an action may be maintained against the public official.  Roman v. Stamford, 16 Conn. App. 213, 220, aff'd, 211 Conn. 396 (1989).  Conversely, an act that affects an individual in the same manner as it would the general public is public in nature.  See Roman, 16 Conn. App. at 220.  A public duty serves and affects the public generally.  The issue of whether an employee was engaged in a public or private duty is a question of law for the Court to decide.  See id.

The determination of what constitutes a governmental function involves a two-part analysis.  The analysis first involves a determination as to whether the conduct complained of involves a private duty or a public duty.  See Roman, 16 Conn. App. at 219; Gordon, 208 Conn. at 170.  The evaluation of whether a duty owed by a public official is public or private in nature turns on whether the duty owed "is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large . . . ."  Roman, 16 Conn. App. at 220.

All of the actions of the Wethersfield Police Officers operating the department and enforcing the laws of the State of Connecticut involve public duties.

## C.   IT IS APPARENT FROM THE COMPLAINT THAT THE PLAINTIFF ALLEGES SOLELY THE FAILURE TO PERFORM DISCRETIONARY DUTIES

Connecticut law is well-established that, although the determination of whether governmental acts or omissions are discretionary versus ministerial in nature is normally a question of fact for the fact-finder, the determination may be made as a matter of law where it is apparent from the complaint.  See Martel v. Metropolitan Dist. Comm'n, 275 Conn. 38, 49, 881 A.2d 194 (2005); Violano v. Fernandez, 280 Conn. 310, 321, 907 A.2d 1188 (2006); Evon, 211 Conn. at 505-07; Lombard v. Edward J. Peters, Jr., P.C., 252 Conn. 623, 628, 749 A.2d 630 (2000); see also, Gordon, 208 Conn. at 170; Grignano v. Milford, 106 Conn. App. 648, 654-55, 943 A.2d 507 (2008); Soderlund v. Merrigan, 110 Conn. App. 389, 394, 955 A.2d 107 (2008); Segreto v. Bristol, 71 Conn. App. 844, 855, 804 A.2d 928 (2002); Colon v. Board of Education, 60 Conn. App. 178, 181-82, 758 A.2d 900 (2000).  More specifically,

> [t]he determination of whether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to § 52-557n(a)(2)(B), turns on the character of the act or omission complained of in the complaint…. Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions *necessarily* involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper.

Grignano, 106 Conn. App. at 655 (emphasis in original), quoting Martel, 275 Conn. at 51, n.8; see also, Violano, 280 Conn. at 321-22.

The Connecticut Supreme Court has noted that, "municipal acts that would otherwise be considered discretionary will only be deemed ministerial if a *policy or rule* limiting discretion in the completion of such acts exists."  Benedict v. Norfolk, 296 Conn. 518, 520 n. 4 (2010) (emphasis added).  Accordingly, in order to establish the existence of a ministerial duty, a plaintiff must allege and prove that the defendant was required, by way of city charter provision, ordinance, regulation, rule, policy, or other directive, to

perform the action alleged in a prescribed manner and failed to do so.  See Violano, 280

Conn. at 323 (holding that the Court correctly determined that governmental immunity

applied to bar the plaintiff's claim where the plaintiffs failed to allege that there was any

rule, policy or directive that prescribed the manner in which the defendant was to act);

Segreto, 71 Conn. App. at 857-58 (holding that the Court correctly concluded, as a

matter of law, that the complaint alleged the failure to perform a discretionary duty in the

absence of an allegation that the city had some policy or directive in place regarding

those duties with which it or its employees failed to comply); Colon, 60 Conn. App. at

182-83 (affirming the trial court's finding of a discretionary duty where the complaint was

devoid of any allegation that the defendant was required to perform in a proscribed

manner and failed to do so); Martel, 275 Conn. at 50 (holding that summary judgment

was appropriate where the plaintiff failed to present any evidence demonstrating that a

policy or directive existed which required the defendant to perform its duty in a specified

manner).

Where a plaintiff's allegations relate to whether a municipal defendant acted in a

reasonable, proper or adequate manner, or whether its conduct was reasonable and

proper under the circumstances, Connecticut courts have consistently held that such

determinations are discretionary as a matter of law.  See Martel, 275 Conn. at 49-50;

Segreto, 71 Conn. App. at 856-58; Evon, 211 Conn. at 506-507.  Specifically,

"[d]eterminations as to what is reasonable or proper under a particular set of

circumstances necessarily involve the exercise of judgment and are, therefore,

discretionary in nature."  Segreto, 71 Conn. App. at 854; Martel, 275 Conn. at 49-50;

Violano, 280 Conn. at 323-24; Grignano, 106 Conn. App. at 656-57; Evon, 211 Conn. at

506-507.  Thus, it is apparent from the very language of the Complaint that the conduct alleged are discretionary actions as a matter of law.  Id.

As a general rule, "a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." Williams v. New Haven, 243 Conn. 763, 767, 707 A.2d 1251 (1998).  "General Statutes § 52–557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages." Doe v. Petersen, 279 Conn. 607, 614–15, 903 A.2d 191 (2006).  Section 52–557n(a)(1) provides in relevant part:  "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by:  (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties ..."  Section 52–557n(a)(2), however, limits municipal liability for negligent acts or omissions by providing in relevant part:  "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: ... (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

Section 52–557n(a)(2) is read to mean that a municipality is immune from its acts or the acts of its employees that are discretionary, or governmental, in nature.  Martel v. Metropolitan Dist. Comm'n, 275 Conn. 38, 48, 881 A.2d 194 (2005).  "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature." Spears v. Garcia, 263 Conn. 22, 36, 818 A.2d 37 (2003).  "The hallmark of a discretionary act is that it requires the exercise of judgment." Lombard v.

Edward J. Peters, Jr., P.C._, 252 Conn. 623, 628, 749 A.2d 630 (2000); see also Teresa T. v. Ragaglia, 272 Conn. 734, 745, 865 A.2d 428 (2005) ("[W]hen applied to public functionaries, discretion means a power or right conferred upon them by law of acting officially in certain circumstances, according to the dictates of their own judgment and conscience").  "In contrast, ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion."  Martel v. Metropolitan Dist. Comm'n, supra, at 49.

There a long-standing, consistent body of caselaw in Connecticut that favors governmental immunity as a matter of policy and specifically recognizes that the operation of a police department, to include **hiring, firing, training and supervision**, is protected by governmental immunity.  "Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society ... Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury ... In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts ... This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Citations omitted; internal quotation marks omitted.) Doe v. Petersen, supra, 279 Conn. at 614–15.

As a general rule, our Supreme Court has held that "the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality."  (Internal quotation marks omitted.)  Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180, 544 A.2d 1185 (1988).  In the context of claims arising out of the failure to properly or adequately train and supervise municipal police officers, the courts have found that such considerations fall within the discretionary function of the municipality.  Swanson v. Groton, 116 Conn.App. 849, 862, 977 A.2d 738 (2009) (affirming summary judgment for the municipality finding that the officer had received training on how to handle intoxicated persons); Disabella v. West Hartford, Superior Court, judicial district of Hartford, Docket No. CV 04 0832044 (November 15, 2005, Keller, J.) ("Decisions on how to train officers with regard to traffic stops and investigations, and what such training should consist of, constitute discretionary governmental acts"); Alexander v. Vernon, Superior Court, judicial district of Tolland, Docket No. X07 CV 02 0078935 (May 3, 2004, Sferrazza, J.) ("The supervision of a police force obviously involves the exercise of wide discretion"); Cook v. Hartford, Superior Court, judicial district of Hartford–New Britain, Docket No. CV 89 0362482 (August 21, 1992, Aurigemma, J.) [7 Conn. L. Rptr. 720] ("The act of training and supervising police officers is clearly a discretionary governmental function").  Furthermore, a municipality generally enjoys wide discretion in hiring, disciplining and terminating municipal employees.  Celotto v. Brady, Superior Court, judicial district of New Haven, Docket No. CV 06 5003279 (May 14, 2008, Bellis, J.) ("A decision to terminate employment requires substantial use of judgment, and is not a duty which is to be performed in a prescribed manner without

the exercise of judgment or discretion"); <u>Coletosh v. Hartford</u>, Superior Court, judicial

district of Hartford, Docket No. CV 97 0573462 (April 13, 1999, Wagner, J.T.R.) [24

Conn. L. Rptr. 399] ("The acts or omissions alleged in the plaintiff's complaint—

negligent failure to instruct, supervise, control and discipline Hartford police officers—

appear to be discretionary or governmental acts as a matter of law"); <u>Gervais v. West

Hartford Board of Education</u>, Superior Court, judicial district of Hartford–New Britain,

Docket No. CV 95 0555396 (July 25, 1996, Lavine, J.) (17 Conn. L. Rptr. 383, 385)

("Considerations of who to hire, how to train such people, and how to supervise

employees are decisions requiring the use of judgment and discretion").

Given the above body of caselaw, to the extent plaintiff claims that the Town was

negligent for failing to provide different training, that is protected by discretionary act

immunity under Connecticut law.

In addition, the actions taken by Officer Peter Salvatore are protected by

immunity.  His decision, of how to conduct his patrol in his cruiser is discretionary; his

decision to investigate the Infiniti in the closed bank parking lot, given the circumstances

of prior ATM tampering of which he was aware, is discretionary; his decision to run the

Infiniti's plate is discretionary; his decision to stop the Infiniti based on probable cause to

believe the crime of misuse of plates have been committed, is discretionary; his

decision to approach the stopped Infiniti is discretionary; his decision to return to his

vehicle after the Infiniti left the traffic stop without permission is discretion; his decision

to return to his vehicle and follow in the direction of the Infiniti is discretionary; his

decision to approach the scene of the stopped Infiniti after it spun out is discretionary;

his decision to approach the Infiniti with caution when it came to final rest after deadly

force was used by Officer Eulizier, given that none of the Wethersfield Police

Department officers knew whether anyone in the vehicle was armed, injured, or if

injured, the extent of injury, is discretionary.  (See Salvatore Affidavit, Exhibit J to Local

Rule 56a(1) Statement.)  As to every aspect of the above event, there is no department

policy that mandated the specific manner of how Officer Salvatore was to act in the

circumstances presented.  (See Salvatore Affidavit, Exhibit J to Local Rule 56a(1)

Statement.)

Furthermore, there is no basis for application of the imminent harm exception to

immunity.  The plaintiff bears the burden of establishing that his claims are within the

identifiable victim at imminent harm exception.  For the "identifiable person at imminent

harm" exception to apply, the plaintiffs must prove the following three elements: (1) an

imminent harm; (2) an identifiable victim; **and** (3) a public official to whom it is apparent

that his or her conduct is likely to subject that victim to that harm.  See Doe v. Petersen,

279 Conn. 607, 616, 621 (2006).  Demonstration of less than all three elements is

insufficient for the exception to apply.  Id.; Edgerton v. Clinton, 311 Conn. 217, 230, 86

A.3d 437 (2014) (reaffirming that "[a]ll three [requirements] must be proven in order for

the exception to apply.").  The "identifiable person" and "imminent harm" elements must

be evaluated with reference to each other.  Id. at 620-21.  An allegedly identifiable

person must be identifiable as a potential victim of a specific imminent harm.  Id.

Likewise, the alleged imminent harm must be imminent in terms of its impact on a

specific identifiable person.  Id.  It is impossible to be an identifiable person in the

absence of any corresponding imminent harm.  Id.  In expounding on the imminent

harm prong, the Supreme Court has held that

[f]or the harm to be deemed imminent, the potential for harm must be sufficiently immediate.  In fact, the criteria of identifiable person and imminent harm must be evaluated with reference to each other.  An allegedly identifiable person must be identifiable as a potential victim of specific imminent harm.  Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person . . .  For the purposes of the imminent harm exception … it is impossible to be an identifiable person in the absence of any corresponding imminent harm . . . .  Indeed, we have found imminent harm only in the clearest of cases.

Cotto v. Bd. of Ed., 294 Conn. 265, 276 (2009) (internal quotation marks omitted;

internal citations omitted).

It certainly was not apparent to Officer Salvatore that any of the above actions

would subject any person to a risk of imminent harm.  The cruiser cam video depicts

undisputed facts as to the circumstances confronting Officer Salvatore and how he

reacted.  (See Exhibit K to Local Rule 56a(1) Statement.)  The imminent harm exception

to immunity requires more than foreseeability that harm night result, it requires an

apparentness to a municipal employee that a specific harm is about to occur imminently

such that there is an immediate need to act to prevent it.  Only then would a failure to

act despite having opportunity to do so escape the protection of immunity.  See Brooks

v. Powers, 328 Conn 256 (2018); Haynes v. Middletown, 314 Conn. 303 (2104);

Edgerton v. Clinton, 311 Conn 217 (2014).

To the extent plaintiff claims that the officers should have rushed to the Infiniti

rather than proceed with caution, resulting in a delay of only several minutes (See CSP

Report, Exhibit D to Local Rule 56a(1) Statement.)  That decision is an inherently

discretionary act, and a reasonable exercise of discretion by Officer Salvatore and

others who chose to approach cautiously, given that the  operator of the Infiniti had

already demonstrated a determination to do whatever it took to avoid apprehension,

including fleeing a traffic stop and driving directly at Officer Eulizier.  Furthermore, on the undisputed record, it is clear that the plaintiff suffered an unalterably fatal injury in the time that elapsed, while the officers made sure the scene was safe to approach the vehicle, as a matter of law, made no difference to the outcome.  (See Exhibits H, I, D and F -- paramedic Quezada testimony and Patient Care Report, Medical Examiner's testimony and front seat passenger Santiago's testimony to Local Rule 56a(1) Statement.)

Finally, to the extent plaintiff claims that the Town's policy regarding police pursuit was triggered the undisputed facts are seen in the video from Officer Salvatore's cruiser, and demonstrate this was not a police pursuit only.  (See Exhibit K to Local Rule 56a(1) Statement.)  After the operator of the Infiniti fled the traffic stop, and Officer Salvatore rushed back to his cruiser, he had moved forward for three seconds when he saw the Infiniti lose control about 200 feet ahead of him.  (See Salvatore Affidavit Exhibit J and Cruiser video, Exhibit K to Local Rule 56a(1) Statement.)  The video demonstrates the facts to be undisputed, that Officer Salvatore was never in a police pursuit during those three seconds, when he was not behind the Infiniti, which was in a different lane and 200 feet ahead of him.

Based on the above the defendant, Town of Wethersfield, is entitled to judgment as a matter of law on Count IV, asserting negligence against it.

**V.**   **PLAINTIFFS CLAIM IN COUNT V FOR WRONGFUL DEATH IS BASED ON THE OTHER LEGAL CLAIMS IN THE COMPLAINT AND THE DEFENSES TO THOSE CLAIMS BAR THE WRONGFUL DEATH CLAIM AS WELL**

Regarding Count Five, plaintiff has set forth a claim for the wrongful death of Anthony Vega Cruz.  This claim is grounded on the legal theories advanced in other

counts, and the defenses asserted as to other counts, whether based on an intentional tort, negligence or civil rights theory of liability, apply to entitle the Town of Wethersfield to judgment as a matter of law, in Count Five as well.  See Soto v. Bushmaster Firearms International, LLC, 331 Conn. 53, 88, 104-105 (2019).  (Although the plaintiffs brought their claims pursuant to the wrongful death statute; C.G.S. § 52-555; a wrongful death action will lie only when the deceased person could have brought a valid claim for the injuries that resulted in death if he or she had survived.)  Accordingly, judgment should enter as to the Town of Wethersfield on Count V of the Complaint, which is derivative of the other counts in the Complaint.

For the reasons set forth above the defendants, Town of Wethersfield and John Does I-XX, are entitled to judgment in their favor as a matter of law.

DEFENDANTS,
TOWN OF WETHERSFIELD and JOHN
DOES I-XX


By /s/ Thomas R. Gerarde
    Thomas R. Gerarde
    ct05640
    Howd & Ludorf, LLC
    65 Wethersfield Avenue
    Hartford, CT  06114-1192
    Ph:  (860) 249-1361
    Fax: (860) 249-7665
    E-mail: tgerarde@hl-law.com

## <u>CERTIFICATION</u>

This is to certify that on January 16, 2023, a copy of the foregoing Memorandum of Law in Support of Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


     /s/ Thomas R. Gerarde
Thomas R. Gerarde