UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY COLON )<br>*Individually and as administrator of the* )<br>*Estate of Anthony Vega-Cruz* )<br>    *Plaintiff*, )<br>  )<br>v. )<br>  )<br>LAYAU EULIZIER ET AL. <br>    *Defendant.* | 3:21-CV-00175 (KAD)<br><br><br><br>AUGUST 11, 2023 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 45)**

Kari A. Dooley, United States District Judge:

This case arises out of the shooting death of Anthony Vega-Cruz ("Vega-Cruz") on April 20, 2019 by Defendant Layau Eulizier ("Defendant" or "Eulizier")[1], a former police officer with the Wethersfield Police Department. Plaintiff, Anthony Colon, filed this civil rights action as the administrator of the Vega-Cruz estate asserting, *inter alia,* that Defendant's use of excessive force violated Vega-Cruz's Fourth Amendment rights under the United States Constitution. Pending before the Court is Defendant's motion for summary judgment in which he asserts that he is entitled to judgment as a matter of law because the shooting did not amount to excessive force and, in any event, he is entitled to qualified immunity. Plaintiff opposes summary judgment and asserts that there are issues of material fact as to whether Defendant's use of deadly force was excessive or whether qualified immunity protects Eulizier. For the reasons that follow, Defendant's motion for summary judgment is DENIED.

---

[1] Plaintiff also sued the Town of Wethersfield but all references to "Defendant" herein shall be to Eulizier.

1

**Standard of Review**

The standard under which motions for summary judgment are decided is well known and well established. Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Significantly, the inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. The moving party bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

If the moving party meets this burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Beyer v. Cnty. Of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *See Anderson*, 477 U.S. at 249–50 (citations omitted). Importantly, "[a]ssessments of credibility and choices between conflicting

versions of the events are matters for the jury, not for the court on summary judgment." *Adamson v. Miller*, 808 F. App'x 14, 16 (2d Cir. 2020) (summary order) (internal quotation marks omitted).

**Facts[2]**

On April 20, 2019, Plaintiff's decedent, Vega-Cruz, was operating his Infiniti G35 Lexus on or near the Silas Deane Highway in Wethersfield, Connecticut. At approximately 5:45 p.m., Officer Salvatore of the Wethersfield Police Department ("WPD") observed heavily tinted windows on Vega-Cruz's vehicle and observed the vehicle making a right turn while activating its left turn signal. While the vehicle was parked in a parking lot, Officer Salvatore checked the COLLECT system for the vehicle's license plates, which revealed that the plates were tied to the suspended registration of a Hyundai, which indicated a misuse of Connecticut license plates. Officer Salvatore decided to conduct a motor vehicle stop, advising WPD dispatch of his decision. When Officer Salvatore activated his lights to conduct the stop, Vega-Cruz did not immediately stop, and instead sped off at a high rate of speed.[3] Officer Salvatore advised dispatch that the driver had sped off and requested back up.[4] Officer Salvatore promptly caught up with Vega-Cruz, who pulled over by 1078 Silas Deane Highway, where a Goodyear Auto Service store is located.

Defendant was in the same vicinity, heard the request for back up, and decided to assist Officer Salvatore. As Officer Salvatore approached the vehicle on foot, Vega-Cruz sped off traveling north on the Silas Dean Highway. The road was wet, and the traffic was moderate. At this point, the parties' narratives diverge as to what Defendant did, each citing to the DashCam

---

[2] This summary is comprised of facts taken from the parties' respective Local Rule 56(a) statements and derives principally from those facts about which there is no dispute. As discussed *infra.*, there are significant disagreements as to how the events of April 20, 2019 unfolded.

[3] Defendant asserts that Vega-Cruz was weaving in and out of traffic, citing, *inter alia,* Salvatore's cruiser video. Plaintiff asserts Vega-Cruz made a single lane change, citing the same video. This disagreement is emblematic of the cross-briefing in this case.

[4] Plaintiff adds to this fact that Officer Salvatore advised dispatch that he was attempting a traffic stop (presumably as opposed to an investigative stop in connection with a criminal offense).

videos from both police cruisers.[5] Ultimately, the parties agree that Vega-Cruz lost control of the vehicle, spun out and came to a stop, facing southbound in front of a parking lot servicing businesses at 943-957 Silas Dean Highway. After Vega-Cruz passed Defendant, Defendant performed a U-turn and accelerated toward Vega-Cruz's vehicle, hitting the front end of the vehicle before coming to a stop. Defendant's vehicle blocked the Infiniti from proceeding southbound. Defendant exited his vehicle with his firearm drawn. Vega-Cruz then began to drive in reverse. At this point, Officer Salvatore arrived at the scene. As Vega-Cruz backed up into the southbound lanes of the Silas Deane Highway, Officer Salvatore collided with the Infiniti. It nonetheless continued in reverse, attempting to align the front of the vehicle in a northbound direction. Defendant then came around the front of Officer Salvatore's vehicle with his weapon drawn and yelled at the driver to "show me your hands." The Infiniti, now facing northbound, began to move forward. Defendant fired two shots into the windshield, the first striking Vega-Cruz in the head. The vehicle stopped momentarily and then slowly rolled forward, coming to a stop at a business across the highway. Sixty seconds elapsed from the time that Defendant began on an intercept course with the Infiniti to the time the shots were fired.

**Discussion**

Defendant seeks summary judgment on both the merits of Plaintiff's Fourth Amendment claim of excessive force, or alternatively, on his defense that he is entitled to qualified immunity. Plaintiff opposes summary judgment and asserts that the record evidence reveals genuine issues of material fact which must be decided before a determination as to whether Defendant's use of

---

[5] Defendant asserts that as he observed the Infiniti traveling in his direction—with Officer Salvatore behind—he traveled south on the Silas Deane Highway and straddled the yellow line between a turning lane and the northbound lanes. Plaintiff asserts that Defendant crossed into the northbound lane in which Vega-Cruz was travelling to block the northbound lane. As Vega-Cruz approached, he swerved into the southbound lanes to avoid Defendant's vehicle. The Court's review of the available video footage does not definitively resolve the factual dispute as to what Defendant did as he traveled across the southbound lanes and into the northbound lane in which Vega-Cruz was driving.

deadly force was excessive, or alternatively, whether he is protected by qualified immunity.[6] Upon review of the substantial submissions,[7] the Court agrees with Plaintiff. There are genuine issues of material fact as to the circumstances giving rise to the death of Plaintiff's decedent, which precludes, at the summary judgment stage, a determination as to whether the use of deadly force was excessive or whether Defendant is entitled to qualified immunity. These are issues for the jury to decide.

*Section 1983: Excessive Force*

Plaintiff alleges that Defendant violated Vega-Cruz's Fourth Amendment rights, as incorporated against the states by the Fourteenth Amendment, *see Tenenbaum v. Williams*, 193 F.3d 581, 602 n.14 (2d Cir. 1999), using deadly force on April 20, 2019.[8] "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Jamison v. Metz*, 541 F. App'x 15, 19 (2d Cir. 2013) (summary order) (internal quotation marks omitted). "A police officer violates the Fourth Amendment if the amount of force he uses in effectuating an arrest is objectively unreasonable in light of the facts and circumstances

---

[6] Defendant also asserts that he is entitled to governmental immunity. As the Court finds that genuine issues of material fact exist which preclude summary judgment, no further discussion regarding the applicability of governmental immunity is included herein.

[7] In addition to briefing, the Court received as exhibits thereto from Defendant a State Police Investigative report; sworn statements from Officer Salvatore and Defendant; a witness statement from Mr. Braga; Officer Salvatore's cruiser video; Defendant's cruiser video; a surveillance video report; a DashCam Report; various photographs; and a report of an interview with Officer Santiago. From Plaintiff, the Court received Officer Salvatore's DashCam footage; an interview with Officer Santiago; Defendant's DashCam footage; surveillance video; Defendant's cruiser interior video; the State of Connecticut's Chief Medical Examiner's report; the State's Attorney for the Judicial District of Hartford's report; deposition testimony of Officer Santiago; two WPD incident reports; WPD's Investigation Report, including a transcript of the dispatch recordings; deposition testimony of Defendant; WPD's Call Summary Report; General Order 5-412 regarding Vehicle Pursuits; and deposition testimony of Ms. Salvatore.

[8] Plaintiff also alleges a substantive due process claim in his own right under the Fourteenth Amendment, arising out of the loss of his "protected" interest in a familial relationship with Vega-Cruz. The parties did not brief the viability of this claim separate and apart from the excessive force claims. The Court notes, however, that this claim also derives, as a factual matter, from the excessive force allegations. The Court offers no opinion as to whether a substantive due process claim is implicated by the allegations in this case.

confronting the officer." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (internal quotation marks and alterations omitted).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). More specifically, "[a] determination of whether the force used was reasonable requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Miller*, 968 F.3d at 155 (internal quotation marks omitted). Importantly, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "In sum, the standard to be applied in determining whether the amount of force used exceeded the amount that was necessary in the particular circumstances is reasonableness **at the moment**." *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (emphasis added; internal quotation marks omitted).

"In light of the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable

factfinder could conclude that the officers' conduct was objectively unreasonable." *Miller*, 968 F.3d at 155 (internal quotation marks and alterations omitted).

*Qualified Immunity*

"[Q]ualified immunity protects government officials from suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815–16 (2009). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 135 S. Ct. 2042, 2044 (2015). "Rights must be clearly established in a 'particularized' sense, rather than at a high level of generality, *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017), and while "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

"Therefore, an official is entitled to qualified immunity if, considering the law that was clearly established at the time, the official's conduct was 'objectively legally reasonable.'" *Nazario v. Thibeault*, No. 3:21-cv-216-VLB, 2022 WL 2358504, at *8 (D. Conn. June 30, 2022) (quoting *Taravella*, 599 F.3d at 133). "The objective reasonableness of an official's conduct 'is a mixed question of law and fact.'" *Id.* "At the summary judgment stage, while a conclusion that an official's conduct 'was objectively reasonable as a matter of law may be appropriate where there

7

is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder.'" *Id.*

Considering these standards, it is manifest that the merits of Plaintiff's claim and the question of qualified immunity overlap significantly, as both require an assessment of the objective reasonableness of Defendant's conduct. *Diaz v. City of Hartford Police Dep't,* No. 3:18-CV-01113 (KAD), 2021 WL 1222187, at *5 (D. Conn. Mar. 31, 2021). Indeed, in some excessive force cases, the qualified immunity and Fourth Amendment issues converge on one question: "Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." *Cowan ex rel. Est. of Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003).

It bears repeating that summary judgment is not appropriate in this highly fact specific context unless "no reasonable juror could conclude that [Defendant's] conduct was objectively unreasonable." *Miller*, 968 F.3d at 155. And further, that "while a conclusion that an official's conduct 'was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder.'" *Nazario,* 2022 WL 2358504, at *8.

On this issue, Defendant asserts that there is no genuine issue of material fact as to the events giving rise to the use of deadly force. Defendant argues that, under the circumstances, he believed that deadly force was necessary to prevent Vega-Cruz from striking him with his vehicle as he attempted to flee, and that this belief was objectively reasonable. Although Defendant relies upon the video footage as establishing, as a matter of law, that his use of force was reasonable, the video evidence allows for differing conclusions.

By way of example only, the parties agree that at some point, Defendant approached the vehicle on foot. The parties dispute, however, the series of events leading up to Defendant's approach—specifically, whether he intentionally stepped in front of the vehicle or whether it was happenstance that as he came around Salvatore's vehicle, he "found himself" near the front of the Vega-Cruz vehicle. The parties agree that at some point, Officer Salvatore struck the Vega-Cruz vehicle. However, Defendant asserts that Officer Salvatore intentionally struck Vega-Cruz's vehicle because he believed the vehicle was about to strike Defendant. But Plaintiff cites to Officer Salvatore's deposition wherein he denies intentionally striking Vega-Cruz's vehicle. And on this issue, it appears on Officer Salvatore's DashCam video that Officer Salvatore struck the Infiniti while it was traveling in reverse and *before* Defendant had stepped into the lane of travel. And while the parties agree that the vehicle began to move forward, the parties disagree as to both the speed of the car and the direction it was travelling. Plaintiff asserts the car was moving slowly and was turning away from Defendant, that Vega-Cruz was trying to avoid Defendant as he fled, and further, that Defendant could have stepped out of the way of the vehicle. Defendant asserts the vehicle "accelerated towards" him, at which time he reasonably and, out of necessity, fired two shots into the vehicle.[9]

---

[9] Defendant dismisses much of the Plaintiff's evidence and argument as "irrelevant" to the split second decision Defendant made "at the moment" the car began to move forward. *See* Def. Resp., ECF No. 52, at 1. These arguments ignore that the jury's assessment must be made on the totality of the circumstances. *See Heath v. Henning*, 854 F.2d 6, 9 (2d Cir. 1988) (finding that under the Fourth Amendment, "the proper standard requires that a jury consider whether the officers acted reasonably, under the totality of the circumstances, in using deadly force…"); *see also Callahan v. Wilson*, 863 F.3d 144, 149 (2d Cir. 2017) ("[T]he operative question in excessive force cases is whether the totality of the circumstances justifie[s] a particular sort of search or seizure.") (internal quotations and citation omitted). While ultimately the determination of whether Defendant used excessive force or is entitled to qualified immunity may turn on the moment he used deadly force, that does not render irrelevant the facts and circumstances that led to that moment. *See Plumhoff v. Rickard*, 572 U.S. 765 (2014) (where the Court examined and deemed relevant videotape evidence of a high-speed car chase that lasted over five minutes—and included the car driving at a speed of 100 miles per hour, dozens of other vehicles who altered course, and a clear escape attempt—to determine that a police officer acted reasonably in using deadly force); *see also Gibbs v. City of Bridgeport*, No. 3:16-cv-635 (JAM), 2018 WL 4119588, at *10 (D. Conn. Aug. 29, 2018) (finding that the objective reasonableness inquiry must focus on an officer's knowledge of the circumstances "immediately prior to **and** at the moment of his decision to use deadly force") (emphasis added; citation omitted); *see Hemphill v. Schott*, 141 F.3d 412, 414 (2d Cir. 1998) (overturning a

As to each of these critical facts, the parties cite to portions of the record evidence as supporting their competing narratives. The Court has reviewed the various videos, the investigative reports, the sworn statements, and the other exhibits appended to the motion for summary judgment and the opposition to same. And although video evidence can often resolve a motion for summary judgment, *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (finding no genuine issue of fact for trial where video evidence of circumstances of a police chase contradicted plaintiff's eye-witness testimony), in this case it does not do so. Indeed, the Court is left with no firm conviction as to the objective reasonableness of Defendant's use of deadly force for purposes of either the Fourth Amendment or qualified immunity analysis.

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 45) is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of August 2023.

        */s/ Kari A. Dooley*
        KARI A. DOOLEY
        UNITED STATES DISTRICT JUDGE

---

District Court decision granting summary judgment because the Second Circuit found that there was a genuine issue of material fact regarding the version of events "immediately preceding the shooting").