**MANDATE**

23-1211-cv
*Vega-Colon v. Eulizier*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of July, two thousand twenty-four.

PRESENT:
> JOSEPH F. BIANCO,
> BETH ROBINSON,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

---

JOSE VEGA-COLON, individually and as administrator of the Estate of Anthony Vega-Cruz, ANTHONY COLON, individually and as administrator of the Estate of Anthony Vega-Cruz,

> *Plaintiffs-Appellees*,

> v.

LAYAU EULIZIER, OFFICER, in his official and individual capacity,

> *Defendant-Appellant*,

TOWN OF WETHERSFIELD, JOHN DOES, I-XX, whose names and identities are not currently known,

> *Defendants*.

23-1211-cv

---

FOR PLAINTIFFS-APPELLEES:    ERIC VALENZUELA (Dale K. Galipo, *on the brief*), Law Offices of Dale K. Galipo, Woodland Hills, California.

FOR DEFENDANT-APPELLANT:    ELLIOT BRUCE SPECTOR, Hassett and George, P.C., Simsbury, Connecticut.

Appeal from an order of the United States District Court for the District of Connecticut (Kari A. Dooley, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order, entered on August 11, 2023, is **AFFIRMED**.

Defendant-Appellant Layau Eulizier, a former police officer of the Wethersfield Police Department ("WPD"), appeals from the order of the district court denying his motion for summary judgment on the excessive force claim brought by Plaintiffs-Appellees Jose Vega-Colon and Anthony Colon under 42 U.S.C. § 1983.  Specifically, Vega-Colon and Colon (together, "Plaintiffs"), acting as administrators of the Estate of Anthony Vega-Cruz,[1] allege that then-Officer Eulizier used excessive force in violation of the Fourth Amendment when he fatally shot Vega-Cruz after a vehicle pursuit on April 20, 2019 in Wethersfield, Connecticut.  The district court denied Eulizier's motion for summary judgment, concluding that the record, which included video

---

[1] We note that the caption on appeal identifies two different individuals as plaintiffs and administrators of the decedent's estate because of ambiguity on that issue created by various filings in the district court.  A review of the district court docket indicates that the original complaint named Jose Vega-Colon as plaintiff.  Plaintiff's counsel later filed an unopposed motion to substitute Anthony Colon as the sole named plaintiff, indicating that counsel had "mistakenly listed Jose Vega-Colon as the administrator for the estate of his son, Anthony Vega-Cruz.  However, Anthony Colon, Decedent's brother, was actually appointed as the administrator of Anthony Vega-Cruz's estate."  *Colon v. Eulizier*, No. 3:21CV00175(KAD), ECF No. 35 at 1 (D. Conn. Nov. 2, 2021).  The motion was granted.  When the motion for summary judgment was denied and the Notice of Appeal filed, Anthony Colon was the sole named plaintiff.  After the Notice of Appeal was filed, plaintiff's counsel filed (with leave of the court) an amended complaint.  The amended complaint, however, did not contain an updated caption that reflected the substitution of parties and erroneously listed Jose Vega-Colon, rather than Anthony Colon, as administrator and plaintiff, and the caption in the district court docket was then updated to include that error.  Therefore, on remand, the district court should confirm that Anthony Colon remains the administrator and plaintiff and, if so, amend the caption accordingly.

evidence from police vehicles and nearby surveillance cameras, presented genuine issues of material fact as to whether Eulizier's use of deadly force was excessive and whether he was entitled to qualified immunity.  In this interlocutory appeal, Eulizier challenges the denial of summary judgment on qualified immunity grounds, arguing that the district court failed to properly analyze whether it was clearly established that his use of force violated the Fourth Amendment under the circumstances presented in this case.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

"We review a district court's denial of a motion for summary judgment sounding in qualified immunity *de novo*.  On a motion for summary judgment, of course, the moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle him to judgment as a matter of law, and in ruling on such a motion, the district court must draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment."  *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (internal quotation marks and citations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); Fed. R. Civ. P. 56(a).  However, we have jurisdiction over an interlocutory appeal of a denial of summary judgment based on qualified immunity only "when the defense can be decided based on questions of law and is not dependent on the resolution of factual issues."  *Brown v. Halpin*, 885 F.3d 111, 117 (2d Cir. 2018) (per curiam).  Where, as here, "a district court denies qualified immunity based on the presence of disputed material facts, an appellant may still invoke appellate jurisdiction on an interlocutory basis if the appellant contends that on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find, the immunity defense is established as a matter of law."  *Jok*

3

*v. City of Burlington*, 96 F.4th 291, 295 (2d Cir. 2024) (internal quotation marks and citation omitted). Eulizier accepts Plaintiffs' version of the facts for purposes of this appeal; accordingly, we have jurisdiction to determine whether he is entitled to qualified immunity under those facts.

## BACKGROUND[2]

On April 20, 2019, eighteen-year-old Vega-Cruz was driving with his girlfriend through Wethersfield, Connecticut, in his Infiniti G35. WPD Officer Peter Salvatore observed the Infiniti make a right turn onto Silas Deane Highway while its left turn signal was activated. Salvatore followed the Infiniti into a vacant parking lot and ran its license plate number, which he found was linked to a suspended registration of a Hyundai, suggesting a misuse of license plates. When the Infiniti left the parking lot at a high rate of speed, Salvatore radioed that he was going to stop the vehicle and requested backup. The Infiniti pulled over in the right lane outside a Goodyear Auto Service store on Silas Deane Highway, but sped off when Salvatore approached on foot. Eulizier, who was nearby, heard the call for backup and started driving toward Salvatore's cruiser, which was visible from Eulizier's location. As the Infiniti was about to pass him, moving in the opposite direction, Eulizier straddled the double yellow line between lanes; the parties dispute whether Eulizier intentionally blocked the road in front of the Infiniti, but soon after Eulizier performed this maneuver, Vega-Cruz lost control of the Infiniti and came to a stop. Eulizier then hit the front of the Infiniti with his vehicle, blocking it on the side of the road. He then exited his vehicle and drew his gun, yelling "show me your hands." Joint App'x at 178. The Infiniti had begun to reverse in the direction of the road when Salvatore arrived; Salvatore collided with the left side of the Infiniti. Eulizier, on foot, came around the front of Salvatore's vehicle and stood near the front driver's side of the Infiniti; the parties dispute whether Eulizier intentionally stepped in front of

---

[2] The following facts, which are drawn from the parties' Local Rule 56(a) statements in the district court, are uncontroverted unless otherwise noted.

the Infiniti or merely found himself there.  As the Infiniti started moving forward, Eulizier fired

two shots into the windshield; the first struck Vega-Cruz in the head, killing him.

In the complaint, among other claims, Plaintiffs allege that Eulizier's use of deadly force

violated Vega-Cruz's Fourth Amendment right to be free from excessive force, because Vega-Cruz

"posed no imminent or immediate threat of death or serious bodily injury to anyone, including the

involved officers."  Joint App'x at 14–15.  According to the complaint:  (1) Vega-Cruz "never

attempted to strike the involved officers, or anyone else with his vehicle"; (2) Vega-Cruz "never

intentionally struck the involved officers' vehicles, or anyone else's vehicle, with his car"; and (3)

neither Eulizier nor anyone else was "in the direct path of the car [Vega-Cruz] was driving and

Eulizier was easily able to step out of the way or path of the vehicle" at the time he used deadly

force.  *Id*. at 14.

Following discovery, Eulizier moved for summary judgment on both the merits of the

excessive force claim and, in the alternative, on the defense of qualified immunity.  The district

court denied the motion, concluding that the evidence in the record created genuine issues of fact

that precluded summary judgment on either ground.  *See generally Colon v. Eulizier*, No. 3:21-

CV-00175 (KAD), 2023 WL 5177788 (D. Conn. Aug. 11, 2023).  In declining to afford qualified

immunity to Eulizier at the summary judgment stage, the district court noted that, although the

parties agree that Eulizier approached the Infiniti on foot, "[t]he parties dispute . . . the series of

events leading up to [Eulizier's] approach—specifically, whether he intentionally stepped in front

of the vehicle or whether it was happenstance that as he came around Salvatore's vehicle, he 'found

himself' near the front of the Vega-Cruz vehicle."  *Id*. at *4.  The district court then identified

various other factual disputes, including the following:

> [W]hile the parties agree that the vehicle began to move forward, the parties
> disagree as to both the speed of the car and the direction it was travelling.

> Plaintiff[s] assert[] the car was moving slowly and was turning away from [Eulizier], that Vega-Cruz was trying to avoid [Eulizier] as he fled, and further, that [Eulizier] could have stepped out of the way of the vehicle. [Eulizier] asserts the vehicle "accelerated towards" him, at which time he reasonably and, out of necessity, fired two shots into the vehicle.

*Id*. The district court explained that it had reviewed the relevant portions of the record, including the video evidence, relied upon by the parties to support "their competing narratives" with respect to "each of these critical facts," and emphasized that "although video evidence can often resolve a motion for summary judgment, in this case it [did] not do so." *Id*. at *5 (citation omitted). In short, based upon its review of the record, the district court concluded that it was "left with no firm conviction as to the objective reasonableness of [Eulizier's] use of deadly force for purposes of either the Fourth Amendment or qualified immunity analysis." *Id*. Eulizier filed an interlocutory appeal challenging the district court's denial of summary judgment on qualified immunity grounds.

## DISCUSSION

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). As set forth in the two-step framework articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), "when a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). A right is clearly established if it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Jones v. Treubig*,

963 F.3d 214, 224 (2d Cir. 2020) (internal quotation marks and citation omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks and citation omitted).

Eulizier argues that he is entitled to qualified immunity because it would not have been clear to a reasonable officer, based on existing precedent, that his conduct was unlawful in the situation that he faced, even when viewing the facts most favorably to Plaintiffs. We disagree.

As an initial matter, at the time of the incident in April 2019, it was clearly established law in this Circuit that "it is not objectively reasonable for an officer to use deadly force to apprehend a [fleeing motorist] unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764 (2d Cir. 2003) (internal quotation marks and citation omitted); *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). Thus, Eulizier concedes that "if suspects are driving away from officers during their escapes and pose no risk as no persons [are] in the immediate area[,] officers would not be entitled to qualified immunity" for using deadly force against a fleeing motorist in such a circumstance. Appellant's Br. at 23 (citing *Cowan*, 352 F.3d 756); *see also* Reply Br. at 6 (acknowledging that "*Cowan v. Breen* establishes that using deadly force against the driver of a vehicle who . . . poses no potential risk to officers or others is unconstitutional").

Here, viewing the evidence in the light most favorable to Plaintiffs, including reasonable inferences that can be drawn from that evidence, a reasonable jury could find that Eulizier used

deadly force in violation of the Fourth Amendment under the legal standard articulated in *Cowan*. In particular, a jury could credit Plaintiffs' account of the following facts: After Vega-Colon lost control of the Infiniti and then came to a full stop, the Infiniti started moving forward and to the right at a slow rate of speed, away from Eulizier, who was standing on the side of the road to the left of the Infiniti. Eulizier then suddenly ran out into the roadway toward the front of the Infiniti as it continued to slowly move to the right, away from Eulizier, and, as Eulizier began stepping backwards, he fired two shots into the front window of the Infiniti, the first of which struck Vega-Cruz in the head from about four feet away. Under those factual circumstances, a rational jury could find that there was no probable cause to believe that Vega-Cruz posed a significant threat of death or serious physical injury to Eulizier or anyone else, and thus that it was objectively unreasonable for Eulizier to use deadly force against Vega-Cruz at that moment. Moreover, if such a finding is made by the jury after the factual disputes identified by the district court are resolved at trial, Eulizier would not be entitled to qualified immunity under the second prong of *Saucier* because it was clearly established at that time under *Cowan* that the use of deadly force in that context violated the Fourth Amendment, and thus it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Jones*, 963 F.3d at 224 (internal quotation marks and citation omitted). Accordingly, the district court correctly determined that Eulizier was not entitled to qualified immunity at the summary judgment stage under the Plaintiffs' version of the facts, with all permissible inferences drawn in their favor.

The district court's determination is consistent with the circumstances in *Cowan*, where we explained that the plaintiff had presented evidence that the officer's use of deadly force occurred when the plaintiff's vehicle was traveling slowly and making no sudden turns as it travelled along the roadway, and the officer "was not in front of the vehicle but substantially off to its side when

he fired the second, fatal shot." 352 F.3d at 763. We concluded that "[l]ooking at *only* [the plaintiff's] version of the events . . . suggests that no reasonable officer in [the defendant's] position would have believed that at the crucial moment use of deadly force was necessary"; thus, summary judgment was inappropriate on the ground of qualified immunity. *Id*. In reaching that determination, we further noted that the lawfulness of the officer's conduct could be resolved through jury interrogatories on key factual disputes, "such as whether [the decedent] drove her car towards [the officer], whether [the officer] was in the zone of danger, and if so, whether he safely could have gotten out of the way." *Id*. at 764. In this case, although summary judgment is unwarranted on the qualified immunity issue, Eulizier can likewise propose jury interrogatories at trial regarding the material factual disputes to assist the district court in the ultimate qualified immunity determination.

Eulizier concedes that there are factual disputes with respect to the speed and direction of the Infiniti at the time he used deadly force, but argues that his "observation of the vehicle driving forward for less than 2 seconds and within a distance of less than 5 feet renders the speed and direction [of the Infiniti] irrelevant in the context of the qualified immunity context under clearly established law." Appellant's Br. at 13 [*sic*]. In other words, Eulizier suggests that the brief period of time that he had to make a decision regarding the use of deadly force and his close proximity to the moving vehicle, taken together, mandate that he be cloaked with qualified immunity, even if the vehicle was pulling away from him at a low rate of speed. We disagree.

To be sure, the split-second nature of the decision to use force is a relevant and often important factor in assessing the objective reasonableness of the use of force and the parameters of qualified immunity in excessive force cases. *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers

9

are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). However, such factors still must be considered under the "totality of the circumstances," which includes the circumstances leading up to that split-second decision. *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (per curiam); *see also Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996) ("The reasonableness inquiry depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force."). Thus, if a jury determines (after resolving the factual disputes) that the Infiniti was moving away from Eulizier at a low rate of speed posing no threat to him or other officers, and that it was objectively unreasonable for him to perceive otherwise, the fact that he was in close proximity to the vehicle and fired within seconds of it moving forward would not support a grant of qualified immunity. *See, e.g.*, *Jones*, 963 F.3d at 237 (holding that, where officer "had time to re-assess whether [plaintiff] was still resisting arrest before using the taser a second time against [plaintiff], the rapidly evolving nature of the situation as a whole does not cloak [the officer] with qualified immunity for the unreasonable use of force following that re-assessment"); *see also Abbott v. Sangamon Cnty.*, 705 F.3d 706, 731, 733 (7th Cir. 2013) (holding that officer was not entitled to summary judgment on excessive force claim even where it was a "rapidly unfolding situation" because he had sufficient time to assess the "reasonable quantum of force").

Eulizier also contends that he is entitled to qualified immunity with respect to any reasonable mistake of fact he may have made as to the nature of the threat posed by the moving vehicle at the time he used deadly force. However, we have repeatedly held that "disputed material issues regarding the reasonableness of an officer's perception of the facts (whether mistaken or not) [are] the province of the jury, while the reasonableness of an officer's view of the law is

decided by the district court." *Jones*, 963 F.3d at 231; *see also Green v. City of New York*, 465 F.3d 65, 83 (2d Cir. 2006) ("If there is a material question of fact as to the relevant surrounding circumstances, the question of objective reasonableness is for the jury. If there is no material question of fact, the court decides the qualified immunity issue as a matter of law." (citation omitted)); *Cowan*, 352 F.3d at 762 ("Whether the officer is entitled to qualified immunity is resolved by the latter part of the *Saucier* analysis, which looks at an 'officer's mistake as to what the law requires.'" (quoting *Saucier*, 533 U.S. at 205)); *Stephenson v. Doe*, 332 F.3d 68, 78 (2d Cir. 2003) ("[A]s the Supreme Court clarified in *Saucier*, claims that an officer made a reasonable mistake of fact that justified the use of force go to the question of whether the plaintiff's constitutional rights were violated, not the question of whether the officer was entitled to qualified immunity."). Here the district court determined that there are genuine disputed issues of fact on the question of whether, at the time Eulizier used deadly force, his perception of the surrounding factual circumstances—whether mistaken or not—was reasonable. On this limited interlocutory appeal, Eulizier cannot challenge the determination that such factual disputes exist. *See Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) ("[I]nstant appeal [of a denial of summary judgment on qualified immunity grounds] is not available . . . when the district court determines that factual issues genuinely in dispute preclude summary adjudication."); *Bolmer v. Oliveira*, 594 F.3d 134, 140–41 (2d Cir. 2010) ("[W]here the district court denied immunity on summary judgment because genuine issues of material fact remained, we have jurisdiction to determine whether the issue is *material*, but not whether it is *genuine*."). Thus, a jury must resolve those factual issues regarding the reasonableness of any mistaken perception of the facts by Eulizier before a court can determine whether he is entitled to qualified immunity under the law. *See Anderson*, 477 U.S. at 255

("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").

We are similarly unpersuaded by Eulizier's reliance on cases where the Supreme Court held that an officer was entitled to qualified immunity even though the officer used deadly force against a fleeing motorist. *See* Appellant's Br. at 19–23 (citing *Mullenix*, 577 U.S. 7; *Plumhoff v. Rickard*, 572 U.S. 765 (2014); *Scott v. Harris*, 550 U.S. 372 (2007); *Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam)). In each of those cases, there was uncontroverted evidence regarding the presence of a significant threat of at least serious bodily injury to either a law enforcement officer or innocent bystanders. *See Mullenix*, 577 U.S. at 14 (explaining that plaintiff was traveling "at extremely high speeds, was reportedly intoxicated, had twice threatened to shoot officers, and was racing toward an officer's location"); *Plumhoff*, 572 U.S. at 776–77 (explaining that "the chase in this case exceeded 100 miles per hour and lasted over five minutes," and that "it [was] beyond serious dispute that [plaintiff's] flight posed a grave public safety risk"); *Scott*, 550 U.S. at 380, 384 (describing undisputed video evidence showing that plaintiff led police on "a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury"); *Brosseau*, 543 U.S. at 197, 200 (explaining that the suspect, who was shot while fleeing in a vehicle, "posed a major threat" to those in the immediate area and noting that the suspect later pled guilty to a felony, admitting "that he drove his Jeep in a manner indicating a wanton or willful disregard for the lives of others" (alteration adopted) (internal quotation marks and citations omitted)).

Here, in contrast, the district court has determined that there are disputed issues of fact that preclude summary judgment on the issue of whether there was a threat of serious bodily injury to

Eulizier or others at the time he used deadly force. Accordingly, we discern no error in the district court's denial of summary judgment on qualified immunity grounds.

*              *              *

We have considered Eulizier's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the order of the district court and direct the district court to confirm that Anthony Colon remains the administrator and plaintiff and, if so, amend the caption accordingly.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

13