## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY COLON, as administrator of the Estate of Anthony Vega Cruz | : | 3:21-cv-00175-SFR |
| | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| LAYAU EULIZIER, | : | October 31, 2025 |
| | : | |
| *Defendant* | : | |

## JOINT TRIAL MEMORANDUM

1.    <u>TRIAL COUNSEL</u>

For Plaintiff:

Dale K. Galipo, Eric Valenzuela, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367, (818) 347-3333, dalekgalipo@yahoo.com, evalenzuela@galipolaw.com.

Michael Jefferson, 575 Main Street, East Haven, CT 06512, (203) 787-5683, mjefferson.esq@gmail.com

For Defendant:

Elliot B. Spector, Jeffrey O. McDonald, Forrest A. Noirot of Hassett & George, P.C. 628 Hebron Avenue, Glastonbury, CT. 06033, ebspector87@gmail.com, jmcdonald@hgesq.com, fnoirot@hgesq.com.

2.    <u>JURY TRIAL</u>

The case is to be tried by a jury.

3.    <u>LENGTH OF TRIAL</u>

Approximately 5 days.


4.    <u>FURTHER PROCEEDINGS</u>

None on behalf of Plaintiff.

None on behalf of Defendant


5.    <u>NATURE OF CASE</u>

**Per Plaintiff:**

The nature of the Fourth Amendment cause of action is a 42 U.S.C. § 1983, civil rights action for the use of excessive force which seeks compensatory damages from Defendant for violating Decedent's rights under the United States Constitution in connection with the fatal police shooting of the decedent, Anthony Vega-Cruz by Layau Eulizier of the Wethersfield Police Department, on April 20, 2019, on the Silas Deane Highway, in Wethersfield, Connecticut. Plaintiff also seeks survival damages, wrongful death damages, and statutory attorneys' fees under this claim. A claim that a law enforcement officer used excessive force during a stop or arrest is analyzed under the Fourth Amendment. The "touchstone of the Fourth Amendment is 'reasonableness,'" as measured in objective terms. *Barnes v. Felix*, 605 U.S. 73, 79 (2025), citing *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). That inquiry into the reasonableness of police force requires analyzing the "totality of the circumstances." Barnes, 605 U.S. at 80 (internal citations omitted). So too can actions the officer took during the stop, such as giving warnings or otherwise trying to control the encounter. See *Id*. at 80.

Most notable here, the "totality of the circumstances" inquiry into a use of force has no time limit. *Id*. at 80. Of course, the situation at the precise time of the shooting will often be what matters most; it is, after all, the officer's choice in that moment that is under review. *Id*. But earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones. *Id*. Those later, "in-the-moment" facts "cannot be hermetically sealed off from the context in which they arose." *Id*. Taking account of that context may benefit either party in an excessive-force case. *Id*. Prior events may show, for example, why a reasonable officer would have perceived otherwise ambiguous conduct of a suspect as threatening. *Id*. Or instead, they may show why such an officer would have perceived the same conduct as innocuous. *Id*. The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force. *Id*. at 80-81

The moment-of-threat rule applied in the courts (such as the Fifth Circuit and Second Circuit) prevents that sort of attention to context, and thus conflicts with this Court's instruction to analyze the totality of the circumstances. *Id*. at 81. Historical facts will not often matter as much to the reasonableness analysis. *Id*. at 81-82. Some of those facts may not be relevant at all. But no rule that precludes consideration of prior events in assessing a police shooting is reconcilable with the fact-dependent and context-sensitive approach we have prescribed. *Id*. at 82. A court deciding a use-of-force case cannot review the totality of the circumstances if it has put on chronological blinders. *Id*.

The precise moment of danger analysis used in the Second Circuit is no longer good law and the well-established totality of the circumstances should be

used instead.  This analysis should include any dangers created by the involved officer (such as running out into the middle of the highway and placing yourself in front of the vehicle).  The Court should not use the Connecticut State Model Jury Instruction on Fourth Amendment 42 U.S.C. section 1983 cases, which includes the prices moment of danger language.  Instead, the Court should use the Ninth Circuit Model Fourth Amendment Jury Instruction 9.25, which incorporates the totality of the circumstances analysis.

The nature of the Battery cause of action is for the use of deadly unreasonable force in connection with the fatal police shooting of the decedent, Anthony Vega-Cruz by Layau Eulizier of the Wethersfield Police Department, on April 20, 2019, on the Silas Deane Highway, in Wethersfield, Connecticut.  Plaintiff seeks compensatory damages, wrongful death damages and survival damages.

The nature of the Negligence cause of action is for the use of deadly unreasonable force, including pre-shooting tactics and conduct, in connection with the fatal police shooting of the decedent, Anthony Vega-Cruz by Layau Eulizier of the Wethersfield Police Department, on April 20, 2019, on the Silas Deane Highway, in Wethersfield, Connecticut.  Plaintiff seeks compensatory damages, wrongful death damages and survival damages.

The nature of the Connecticut Constitution Violation cause of action is for the use of excessive force pursuant to *Binette v. Sabo*, 244 Conn. 23, 710 A.2d 305 (1998) which seeks compensatory damages from Defendant for violating Decedent's rights under the Connecticut Constitution in connection with the fatal police shooting of the decedent, Anthony Vega-Cruz by Layau Eulizier of the Wethersfield Police Department, on April 20, 2019, on the Silas Deane Highway, in Wethersfield,

Connecticut.  Plaintiff also seeks wrongful death, survival and statutory attorneys' fees under this claim.

**Per Defendant:**

On April 20, 2019, Officer Peter Salvatore observed a vehicle with heavily tinted windows driving in a suspicious manner. Upon running the license plate through his computer, he learned that the plate was issued to another vehicle, and that the registration was suspended. Officer Salvatore stopped the vehicle on the Silas Deane Highway in Wethersfield. As Officer Salvatore walked toward the vehicle, later learned to be operated by Anthoney Vega-Cruz, the vehicle drove off at a high rate of speed. In a continual attempt to escape Vega-Cruz drove the vehicle in a reckless manner until coming to a momentary stop. Officer Layau Eulizier approached Vega-Cruz attempting to prevent his dangerous driving. Seconds before the shooting Officer Eulizier was moving in front of the stationary suspect vehicle ordering Vega-Cruz to show his hands. At the second the fatal shot was fired the suspect vehicle was moving toward Eulizier, who was approximately 6 feet from the front of the vehicle.

At the moment the use of force was deployed Officer Eulizier objectively believed he and others in the immediate area were at risk of serious injury or death justifying the use of deadly force in defense of himself and others. Salim v. Proulx, 93 F. 3d 86 (2d Cir. 1996); Tennessee v. Garner, 471 U.S. (1985); Graham v. Conner, 490 U.S. 386 (1989): Scott v. Harris, 550 U.S. 372 (2007).

Officer Eulizier's use of deadly force was also privileged under Conn. Gen. Stat. 53a-22(c) as he reasonably believed such force was necessary to defend himself or others from the imminent use of deadly force.

6.     TRIAL BY MAGISTRATE JUDGE

The parties have not agreed to a trial by a Magistrate Judge.


7.     EVIDENCE

   a.     Witnesses

          Witnesses the Plaintiff Expects to Call

1.     Jose Vega Colon, c/o Plaintiff's Counsel, expected to testify as to Plaintiff's damages.  Approximately 45 minutes of testimony.  Likely to testify.

2.     Anthony Colon, c/o Plaintiff's Counsel, expected to testify as to Plaintiff's damages.  Approximately 30 minutes of testimony.  Will be called only if need arises.

3.     Layau Eulizier, c/o Defense counsel, expected to testify as to the use of deadly force against Decedent, police officer standards and training.  Approximately 2 hours of testimony.  Likely to testify.

4.     Pete Salvatore, Wethersfield Police Department, expected to testify regarding involvement in the incident, including witnessing the use of deadly force, police officer standards and training.  Approximately 45 minutes to 1 hour of testimony Likely to testify.

5.     Stephanie Santiago, expected to testify regarding witnessing the use of deadly force.  Approximately 45 minutes of testimony.  Likely to testify.

6.     Camilo Quezada, Athena Ambulance Service, expected to testify regarding Decedent's injuries, medical treatment and medical expenses.  Approximately 30 minutes of testimony.  Will be called only if need arises.

7.      Eric Marandino, Athena Ambulance Service, expected to testify regarding Decedent's injuries, medical treatment and medical expenses. Approximately 30 minutes of testimony.  Will be called only if need arises.

8.      Judith Oriental-Pierre, Hartford Healthcare, expected to testify regarding Decedent's injuries, medical treatment and medical expenses. Approximately 30 minutes of testimony.  Will be called only if need arises.

9.      Jessica Lee, Hartford Healthcare, expected to testify regarding Decedent's injuries, medical treatment and medical expenses.  Approximately 30 minutes of testimony.  Will be called only if need arises.

10.     James R. Gill, State of Connecticut- Office of the Chief Medical Examiner, is expected to testify regarding Decedent's injuries, medical treatment. Approximately 1 hour of testimony.  Likely to testify.

11.     Roger Clark, c/o Plaintiff's counsel, Plaintiff's retained police practices expert.  Expected to testify regarding the use of deadly force against Decedent, police tactics and police officer standards and training.  Approximately 1 hour and 30 minutes of testimony.  Likely to testify.

The opinion to be expressed is that the use of deadly force by Officer Eulizier was excessive, unreasonable, inappropriate, was in violation of police officer standards and training, and that a reasonable officer under similar circumstances would not have used deadly force.  Further, there were less then lethal alternatives and that a verbal warning that deadly force should have been given before shooting Decedent and that it was feasible to do so.

A summary of the basis of the opinion is that it was a bad tactical decision for Eulizier to run onto the highway and position himself near the front of Decedent's car, especially since Decedent had already tried to flee from the officers.  This was

inconsistent with police officer training.  Officers are trained not to position themselves in front of a vehicle, especially a vehicle they suspect might flee or attempt to flee. Further, officers are trained that if they are in the path of a vehicle, get out of the way of the vehicle rather than shooting. Here, Eulizier was able to get out of the way of Decedent's vehicle, which was traveling at a very slow rate shortly before and at the time of the shooting and he could have done so without discharging his firearm at Decedent. Eulizier was easily able to get out of the path and there was not anything physically preventing Officer Eulizier from moving out of the way of Decedent's vehicle and Eulizier could have used one of the police cruisers as cover or as a position of safety away from Decedent's vehicle.

Eulizer was able to move out of the way of Decedent's vehicle and was not struck by the vehicle. Officers are trained not to position themselves in the pathway of a vehicle, and to move out of the way if a vehicle is coming in their direction, instead of shooting. It would have been improper tactics for Eulizier to position himself in the front area of Decedent's vehicle while on foot. This is inconsistent with police officer training.  Further, there was no immediate threat of death or serious bodily injury and there were other reasonable options short of using deadly force.  Shooting at a moving vehicle is highly discouraged, including by WPD's own policy.  By shooting into a moving vehicle in an attempt to disable the driver, officers pose a high risk of danger to the public that the car would become uncontrollable and injure persons or destroy property. Officers are trained not to shoot at moving vehicles, but rather, if a vehicle is coming in their direction to simply step out of the way.  Especially since there was no immediate defense of life situation during this incident.  Alternative measures were available to take the driver of the vehicle into

custody without killing the driver, risking the life of the passenger, and the safety of the public.

The officers' subjective fear in this case does not justify their use of excessive deadly force. In general, subjective fear is insufficient to justify the use of deadly force. Eulizier overreacted in using deadly force, and based on the training, an overreaction in using deadly force is a use of excessive force. Moreover, Eulizier lacked situational awareness during this incident.

Eulizier appears to have intentionally attempted to conduct a roadblock of Decedent's vehicle. Eulizier also appears to have intentionally struck Mr. Vega's vehicle with his vehicle and to have intentionally positioned himself in front of Mr. Vega's vehicle shortly before the shooting. Since Decedent was wanted for a misdemeanor (wrong tags on a license plate), Eulizier should have never attempted a roadblock, Eulizier and Salvatore should not have struck Decedent's vehicle with their vehicle's and Eulizier should have never discharged his gun at Decedent's vehicle as he attempted to flee from the officers.

List of materials on which expert witness intends to rely:

1. Eulizier Deposition Transcript

   a. Exhibit 1-General Order re Use of Force

   b. Exhibit 2 – Surveillance video capturing incident

   c. Exhibit 3 – Dashcam footage

   d. Exhibit 4 – Dashcam footage

   e. Exhibit 5 – Investigation Report-Interview of Eulizier

2. Eulizier Interview report

3. Salvatore Interview Report

4. Police Dispatch Recordings Report

5. WPD Pursuit Policy (457-459) Objection: relevance, prejudicial.

6. WPD Pursuit Policy (460-469) Objection: relevance, prejudicial

7. Autopsy Report

8. Autopsy Photos

9. General Order Vehicle Pursuits (5-413) Objection: relevance, prejudicial

10. Salvatore Dashcam footage

11. Use of Force General Order in effect 4/2019

12. Use of Force Policy General Order 1-041Objection: relevance, prejudicial

13. Use of Deadly Force update 1-041Objection: relevance, prejudicial

14. Officer Salvatore Deposition transcript

15. Ms. Santiago Deposition transcript

Area of witness's expertise is police practices, training and standards.

Attached is a copy of Mr. Clark's report and curriculum vitae.


a. <u>Witnesses the Defendant Expects to Call</u>

1. Layau Eulizier: Mr. Eulizier will testify concerning the facts and circumstances of his observations and acts on April 20, 2019, related to the incident in question. Approximately 90 minutes. Likely to testify.

2. Officer Peter Salvatore, 250 Silas Deane Highway, Wethersfield, CT. 06109 will testify as to his observations and actions on April 20, 2019, related to the incident in question. Approximately 45 minutes. Likely to testify.

3. CSP Detective Brian T. Connolly, 1111 Country Club Road, Middletown, CT 06450 will testify about incident mapping, Faro scanning, trajectory

report and his investigation findings. Approximately 60 minutes. Likely to
testify.

    a. Plaintiff's Objection: Hearsay, relevance, prejudicial

    b. Defendant's Counter Statement: relevant as the witness participated in
       the investigation of the incident.

4. CSP Detective Peter G Farr, 1111 Country Club Road, Middletown, CT
   06450 will testify about the Faro Scan. Approximately 30 minutes. Likely to
   testify.

5. Gaulter "Walter" Braga, 72 Randy Lane, Wethersfield, CT 06109 will testify
   about his observations of event in question on April 20, 2019.
   Approximately 30 minutes. Likely to testify.

6. Louis Papineau, 682 North Elm Street, Wallingford, CT 06492 will testify
   about his observations of event in question on April 20, 2019.
   Approximately 30 minutes. Likely to testify.

7. Stephanie Santiago, 91 Van Block Ave. Apt.E, Hartford CT. 06106 will
   testify about her observations and actions related to the event in question on
   April 20, 2019, as well as her knowledge of Vega Cruz's actions and
   activities prior to the shooting. Approximately 30 minutes. Likely to testify.

8. CSP Detective Kevin F. Duggan, 1111 Country Club Road, Middletown, CT
   06450 will testify about digital photograph evidence. Approximately 45
   minutes. Likely to testify.

9. CSP Detective Steven D. Soares, 1111 Country Club Road, Middletown, CT
   06450 will testify about digital photograph evidence and stolen license plate.
   Approximately 45 minutes. Likely to testify.

    a. Plaintiff's Objection: Hearsay, relevance, prejudicial

    b. Defendant's Counter Statement: relevant as the witness participated in the investigation of the incident.

10. CSP Sergeant Ralph Soda, 1111 Country Club Road, Middletown, CT 06450 will testify as to his role as a supervisor of the investigation of the incident in question as his knowledge of the investigation. Approximately 60 minutes. Will be called only if the need arises.

    a. Plaintiff's Objection: Hearsay, relevance, prejudicial

    b. Defendant's Counter Statement: relevant as the witness participated in the investigation of the incident.

11. James W. Borden, 384 E. Saddle Avenue, Las Vegas, NV. 89121 is A Defendant's retained police practices expert. He will testify about the propriety of the Defendant's decision to use deadly force. He is likely to testify for approximately 2 hours.

Mr. Borden is an expert in police performance dynamics as they pertain to use of force decision making and action/reaction timing.

It is Mr. Bordan's opinion that Officer Eulizier made critical decisions based on factual information he had available at the time the shots were fired and based on the perception of that information, and the reasonable belief that a deadly threat was immediate. Officer Eulizier's decisions were made under the extreme compression of time where the consequences were based on his own safety, life and death and the safety of the community. Mr. Bordan's opinion is that Officer Eulizier, based on reasonable expectations, attempted to control and stop Cruz's perceived violent actions. However, Cruz's continued violent actions placed Officer Eulizier in harm's way. Cruz fled from officers who were performing

lawful objectives. Officer Eulizier was acting on the expectation that Cruz would respond to police presence in the way that a reasonable person in a similar scenario would be expected to respond. Cruz could have chosen not to flee from Officer Salvatore, stop fleeing from police and cease all violent and reckless behavior and comply with officers' commands. Officer Eulizier's decision to initiate use of force was consistent with recognized police performance dynamics for the reasonable application of force, intended for the specific purpose of stopping a perceived deadly threat to himself and to others in the immediate area. Officer Eulizier reasonably believed that Cruz had the ability, opportunity to cause imminent jeopardy to himself and others. Officer Eulizier gave every effort to use tactics to achieve de-escalation prior to being forced to use deadly force to control and de-escalate the scene. A police officer's decision to use force has to be objectively reasonable and for a lawful purpose. Officer Eulizier intervened, exercising the duty to stop the existing and real threat to protect himself and others. Officer Eulizier faced the choice of disengaging to protect himself from Cruz's perceived violent actions and leaving the citizens and other officers unprotected. Officers are not required to retreat or experiment with lower levels of force when a subject poses a perceived deadly threat to the officer and/or others.

Mr. Bordan's opinions are based on a review and analysis of the facts from statements made by Officer Eulizier which were corroborated by witness statements, video evidence and materials contained in the Connecticut State Police investigative report. The factual analysis is applied to objective standards of training and practice including Supreme Court cases, department and statewide policies and procedures and research more fully described in the full expert report.

b. <u>Exhibits</u>

<u>Plaintiff Exhibits:</u>

1.     Autopsy Report (excluding toxicology)

2.     Autopsy Photos

    Defendants Objection: prejudicial

    Plaintiff's counter statement- Relevant to Decedent's injuries and Plaintiff's damages.

3.     Dispatch Recordings

4.     CAD Printout

5.     Wethersfield PD General Order – Vehicle Pursuits

    Defendant's Objection: relevance, prejudicial

    Plaintiff's counter statement- Relevant as to how Wethersfield PD teaches and trains its officers, including Defendant Eulizier, regarding vehicle pursuits.

6.     Wethersfield PD General Order- Use of Deadly Force

    Defendant's Objection: relevance, prejudicial (if post incident)

    Plaintiff's counter statement- Relevant as to how Wethersfield PD teaches and trains its officers, including Defendant Eulizier, regarding vehicle pursuits.

7.     Officer Salvatore Dash Cam Footage

8.     Slow Motion Clip of Officer Salvatore Dash Cam Footage

9.     Still Frames from Officer Salvatore Dash Cam Footage

10.    Surveillance Footage of Shooting

11.    Slow Motion Clip of Surveillance Footage of Shooting

12.    Still Frames of Surveillance Footage of Shooting

13.    Officer Eulizier Dash Cam Footage

14.    Slow Motion Clip of Officer Eulizier Dash Cam Footage

15.    Still Frames from Officer Eulizier Dash Cam Footage

16.    Officer Eulizier Interior Car Footage

17.    Stephanie Santiago Recorded Interview

18.    Ambulance Report

19.    Decedent's Hospital Records

20.    Funeral and Burial Expenses

21.    Video Clips from Connecticut Public Documentary

       Defendant's Objection: relevance, hearsay, prejudicial


22.    Photos of Decedent

       Defendant's Objection: prejudicial

       Plaintiff's counter statement- Relevant as to Plaintiff's damages,
       including wrongful death damages.

23.    Scene Process Videos

24.    Scene Videos

25.    Photos of Officer Eulizier and Equipment

26.    Call Summary Report

27.    Scene Photos

28.    Car Process Photos

29.    Photos of Decedent's Clothing

a. Defendants Exhibits:

500: State Police Sworn Investigative Report

Plaintiff's Objection- Hearsay; Relevance (FRE 402), Undue Prejudice (FRE 403), subject to Plaintiffs' Motion in limine to exclude information regarding use of force being found within policy.

501: Peter Salvatore Sworn Statement

Plaintiff's Objection- Hearsay

502: Peter Salvatore Cruiser Video

503: Layau Eulizier Cruiser Video

504: Incident Mapping Report

Plaintiff's Objection- Hearsay; Relevance (FRE 402), Undue Prejudice (FRE 403).

505 Stephinie Santiago's recorded interview on April 20, 2019

506 Det. Soares Photographs a. #12 cruiser photo; b. # 16 cruiser photo; c. #27 cruiser photo

507 Det. Duggan Photographs a. # 10 bullet strikes; #30 bullet strikes

509 Sterling Jewelers Video

510 Forensic enhanced stills of 502 Salvatore cruiser video

511 Wethersfield Police Dispatch Recordings Report

512 Trajectory report

513 Evidence report

Plaintiff's Objection- Hearsay; Relevance (FRE 402), Undue Prejudice (FRE 403), subject to Plaintiffs' Motion in limine to exclude information not known to officer at time of shooting.

514 Sworn Surveillance Video report

516 Watchguard Dashcam Report

517 Gaulter M. Braga sworn statement

Plaintiff's Objection- Hearsay; Relevance (FRE 402), Undue Prejudice (FRE 403)

518 Search Warrant for 2004 Infinity G35

Plaintiff's Objection- Hearsay; Relevance (FRE 402), Undue Prejudice (FRE 403)

519 Michael Tetro sworn statement re: stolen license plate

Plaintiff's Objection- Hearsay; Relevance (FRE 402), Undue Prejudice (FRE 403) (not necessary as Plaintiff will stipulate as to the license plates being stolen

8.    <u>MOTIONS IN LIMINE</u>

The parties will be filing their motions in limine the same day they file the Joint Trial Memorandum.

9.    <u>STIPULATIONS</u>

1.    Officer Eulizier was acting within the course and scope of his employment as a police officer for the Town of Wethersfield Police Department, at the time of the incident.

2.    Officer Eulizier intentionally shot the Decedent.

3.    Decedent died as a result of his gunshot wounds.

17

10.    PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
       N/A.


11.    JURY TRIALS

       a.    Brief Description of Case and Parties

This case involves a fatal officer-involved shooting that occurred on the Silas
Deane Highway, in Wethersfield, Connecticut, on April 20, 2019.  The Plaintiff is
Anthony Colon, as the Administrator of the Estate of Anthony Vega-Cruz.  The
Defendant Layau Eulizier, who was a police officer for the Wethersfield Police
Department at the time of the incident.

       The issue in dispute is whether Layau Eulizier's use of deadly force against
decedent, Anthony Vega-Cruz, was excessive or not.

       b.    Proposed Voir Dire Questions

Per Plaintiff:

       1.    Do you think that police officers can use excessive/unjustifiable force
against a person?

       2.    Would you hesitate to hold a police officer responsible if the evidence
establishes that the officer had used excessive/unjustifiable force?

       3.    Do you think that police officers should be held accountable if they use
excessive/unjustifiable force?

              A.    If so, are you comfortable with compensation through monetary
damages as a form of accountability?

4.      Would you hesitate to award high monetary damages if the evidence establishes that an officer had used excessive/unjustifiable force and the evidence and law support a high damage award?

5.      With respect to use of force cases or shooting cases, do you think police officers have been portrayed unfairly in the media?

        A.      If so, do you think that it might impact your ability to be fair to either side in this case?

6.      Have you, a family member, or any of your close friends had any contact or association with the Town of Wethersfield or any of its employees, including but not limited to, its police department?

7.      Have you, a family member, a member of your household or any of your friends ever been employed in law enforcement? If so, tell us the relation and position that person holds or held.

8.      Is there anybody that would hold it against the plaintiffs simply because they filed a lawsuit?

9.      Are you comfortable awarding monetary damages for pain, suffering and emotional distress?

10.     Are any of you residents of the Town of Wethersfield?

        A.      If so would you have a difficult time awarding monetary damages against the Town of Wethersfield?

11.     Do you have a maximum amount of damages in mind beyond which you would not award compensation in a lawsuit no matter what the evidence establishes?

12.     Do you think that you could be fair in awarding damages?

13.    You may hear evidence that one of the parties in this case was involved in a vehicle pursuit or car chase during the incident. If you heard this evidence, do you have any strong feelings about vehicle pursuits or car chases that would make it difficult for you to be fair to any of the parties in this case?

14.    Do you think that police officers are capable of ever testifying falsely?

15.    Do you think that police officers ever testify falsely to help other police officers?

16.    Would you give more weight to the testimony of a police officer than a civilian witness?

17.    Have you studied or worked in any forensic field or in crime scene investigations?

18.    Do you have strong feelings towards law enforcement, either positive or negative.

c.    List of Parties, Counsel, and Witnesses
        See List attached.

d.    Proposed Jury Instructions

Per Plaintiff:

## Instruction 1

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending himself.  Therefore, to establish an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officer[s] used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer[s] used excessive force in this case, consider all of the circumstances known to the officer[s] on the scene, including:

(1)    the nature of the crime or other circumstances known to the officer at the time force was applied;

(2)    whether the decedent posed an immediate threat of death or serious bodily injury to the officer or to others;

(3)    whether the decedent was actively resisting arrest or attempting to evade arrest by flight;

(4)    the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5)    the relationship between the need for the use of force and the amount of force used;

(6)    the extent of the decedent's injury;

(7)    any effort made by the officer to temper or to limit the amount of force;

(8)    the severity of the security problem at issue;

(9)    the availability of alternative methods to take the decedent into custody;

(10)     the number of lives at risk (motorists, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

(11)     whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given;     and

(12)     whether a reasonable officer would have or should have accurately perceived a mistaken fact.

Authority: Ninth Circuit Manual of Model Civil Jury Instructions 9.25 (Modified)   Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Excessive Force

Instruction 2[1]

The plaintiff claims that the defendant violated decedent's constitutional right not to be subjected to the use of excessive force by a police officer.  Plaintiff brings this claim under a federal law, 42 U.S. Code § 1983, that provides that a person acting under color of state law who violates a person's rights under the United States Constitution can be held liable for money damages to the person whose rights he has violated.

In order to prove this claim, the plaintiff must prove:

1.  that the defendant was acting under color of state law,

2.  that the defendant engaged in actions that deprived the decedent of his constitutional right not to be subjected to use of excessive force, and

_____

[1] In the alternative to Plaintiff's instruction 1

3.  that the defendant's acts were a proximate cause of the injuries or losses claimed by the plaintiff.

The first element, acting under color of state law, is not in dispute. Police officers get their authority under state law, so they are acting under color of state law when they act in their capacity as police officers.

The second element requires more explanation. The fourth amendment to the United States Constitution guarantees people the right not to be unreasonably seized by government officials, including police officers. This right is violated if a police officer subjects a person to excessive force. The right of a police officer to stop and arrest a person necessarily carries with it the right to use some degree of physical coercion or contact to effect the arrest. This does not mean, however, that the officer may use excessive amounts of force.

Force is excessive, and use of such force constitutes a violation of a person's rights under the fourth amendment, if the amount of force used would not be considered reasonable by a reasonably competent police officer in the circumstances presented at the exact time that the police officer used such force. The test is not whether the defendant thought his use of force was reasonable, but rather it is an objective standard: would a reasonably competent police officer consider the use of such amount of force under the circumstances at the time the force was used?

Applying this standard requires careful attention to the facts and circumstances of the case, including the severity of the crime at issue, whether the plaintiff posed an immediate threat to the safety of the officer or others, and whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight.

23

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20-20 vision of hindsight. Not every push or shove, even if it may later seem unnecessary in the peace of the courtroom, violates the fourth amendment. Your assessment of reasonableness must allow for the fact that the police officer may have had to make a split-second judgment concerning the amount of force that was necessary in circumstances that were tense, uncertain and rapidly evolving.

The issue is whether the force used was reasonable, not the officer's intent or frame of mind. An officer's bad intentions or hostile frame of mind toward the plaintiff will not make a fourth amendment violation out of the use of force that is a reasonable amount of force under the circumstances. An officer's good intentions will not make constitutional what is, in fact, an unreasonable use of force.

In this case, the plaintiff claims that the officer used deadly force, that is, that he fired his gun at the decedent. The standard is that a police officer may use deadly force if he reasonably believes that such force is necessary to defend himself from the actual use or imminent use of deadly physical force.

It is these constitutional standards, rather than the text of any state statute or any departmental regulation, that should govern your consideration of this claim.

The facts are in dispute as to what the circumstances were when the defendant acted.

It is disputed as to whether the officer knew that the initial stop was for a traffic violation and not for a felony, it is disputed as to whether the officer attempted a road-block on decedent's vehicle, it is disputed as to whether the officer intentionally rammed decedent's vehicle.  It is disputed as to whether the officer intentionally ran out into the middle of the highway and positioned himself

near the front of decedent's vehicle while it was on the highway. It is disputed as to whether the officer knew there was a passenger in the vehicle prior to shooting into the vehicle. It is also disputed as to whether the decedent drove his car towards the officer or away from the officer, whether the officer was in the zone of danger, and if so, whether safely could have gotten out of the way.

The third element that the plaintiff must establish is that the defendant's use of force was a proximate cause of the injuries or losses that the decedent sustained. An injury or loss is proximately caused by an action if that action was a substantial factor in bringing about the injury or the loss. The injury or loss must also be either a direct result or a reasonably probable consequence of the act of the defendant. In other words, the plaintiff must satisfy you that decedent's injuries or losses were the natural and probable consequence of the defendant's acts, and that the defendant ought to have foreseen that injury or loss was likely to result from such acts.

Authority: Connecticut Judicial Branch Civil Jury Instructions 5.1-1  Use of Excessive Force (Violation of 42 U.S.C. § 1983)

Instruction 3

The plaintiff alleges that the conduct of the defendant constituted a battery. A battery is a harmful or offensive contact with the person of another.

A harmful contact is one that causes physical impairment of the condition of another's body, physical pain, or illness. An offensive contact is one that offends a reasonable sense of personal dignity.

The contact must be the direct and immediate consequence of a force exerted by the defendant intentionally.

Authority: Connecticut Judicial Branch Civil Jury Instructions 3.13-2, Battery

## Instruction 4

Negligence is the violation of a legal duty which one person owes to another.

Authority: Connecticut Judicial Branch Civil Jury Instructions 3.6-1, Negligence - Definition

## Instruction 5

Common-law negligence is the failure to use reasonable care under the circumstances. Reasonable care is the care that a reasonably prudent person would use in the same circumstances.

Authority: Connecticut Judicial Branch Civil Jury Instructions 3.6-3, Common-Law Negligence Defined

## Instruction 6

In determining the care that a reasonably prudent person would use in the same circumstances, you should consider all of the circumstances which were known or should have been known to the defendant at the time of the conduct in question. Whether care is reasonable depends upon the dangers that a reasonable person

would perceive in those circumstances. It is common sense that the more dangerous the circumstances, the greater the care that ought to be exercised.

Authority: Connecticut Judicial Branch Civil Jury Instructions 3.6-4, Reasonable Care

Instruction 7

A duty to use care exists when a reasonable person, knowing what the defendant here either knew or should have known at the time of the challenged conduct, would foresee that harm of the same general nature as that which occurred here was likely to result from that conduct. If harm of the same general nature as that which occurred here was foreseeable, it does not matter if the manner in which the harm that actually occurred was unusual, bizarre or unforeseeable.

Authority: Connecticut Judicial Branch Civil Jury Instructions 3.6-7, Duty - Foreseeability

Instruction 8

I have previously instructed you that the defendant is under the obligation to exercise the care which a reasonably prudent person would use under the circumstances. The Decedent is also under the same obligation. A plaintiff is negligent if the plaintiff does something which a reasonably prudent person would not have done under similar circumstances or fails to do that which a reasonably prudent person would have done under similar circumstances.

Authority: Connecticut Judicial Branch Civil Jury Instructions 3.5-3, Plaintiff's Duty of Care

## Instruction 9

As I have explained, the plaintiff has claimed that the incident was caused by the defendant's negligence, and the defendant has claimed that it was caused by the plaintiff's own negligence. If you find that negligence on the part of BOTH parties was a substantial factor in causing the incident, then the law is that the plaintiff can recover damages from the defendant only to the extent of the defendant's fault and may not recover damages to the extent that (he/she) (himself/herself) was at fault.

If the plaintiff was more at fault than the defendant, then the plaintiff cannot recover any damages.

Here is an example to make this rule clear: If the plaintiff was 20% at fault and the defendant was 80% at fault, the plaintiff recovers 80% of (his/her) damages. If the plaintiff was 50% at fault and the defendant was 50% at fault, the plaintiff recovers 50% of (his/her) damages. However, if the plaintiff was more than 50% at fault, (he/she) was more at fault than the party (he/she) has sued, and (he/she) recovers no damages.

Just as an example, suppose the plaintiff's total damages were $100. If the plaintiff was 30% at fault and the defendant was 70% at fault, the plaintiff would recover 70% of the $100, or $70. The plaintiff would thus not receive payment for the part of (his/her) damages caused by (his/her) own negligence. Obviously, the numbers used are just for the sake of an example. I could have used $10,000 or $10 million.

Authority: Connecticut Judicial Branch Civil Jury Instructions, 3.5-4, Rules of Comparative Negligence

Instruction 10

I want to discuss the laws pertaining to damages. I will address our general rules and then I will discuss the specific laws relating to a wrongful death case.

As you know, this case is captioned *Anthony Colon, as administrator of the Estate of Anthony Vega-Cruz v. Layau Eulizier*. Mr. Colon, while labeled the plaintiff, is the administrator of the decedent 's estate; the estate is the actual plaintiff in this case. Any damages awarded in this case would go to the estate and not simply to Mr. Colon.

The General Rules of Damages

Insofar as money can do it, a plaintiff is to receive fair, just and reasonable compensation for all injuries and losses, past and future, which are legally caused by the defendant's proven use of excessive force and/or negligence. Under this rule, the purpose of an award of damages is not to punish or penalize the defendant for his use of excessive force and/or negligence but to compensate the plaintiff, and in this case the estate, for the decedent's resulting injuries and losses.

Our laws impose certain rules to govern the award of damages. The plaintiff has the burden of proving his entitlement to recover damages by a fair preponderance of the evidence. The plaintiff must prove both the nature and extent of each particular loss or injury for which he seeks to recover damages and that the loss or injury in question was legally caused by the defendant's use of excessive force and/or negligence. You may not guess or speculate as to the nature or extent

29

of the plaintiff's decedent's losses or injuries. Your decision must be based on reasonable probabilities in light of the evidence presented at trial.

Once the plaintiff has proved the nature and extent of the decedent's compensable injuries and losses, it becomes your job to determine what is fair, just and reasonable compensation for those injuries and losses. Some determinations require a mathematical calculation; others involve the use of human experience and the application of sound common sense.

In a personal injury action, which includes a wrongful death action, there are two general types of damages with which you must be concerned: economic and noneconomic damages. Economic damages are monies awarded as compensation for monetary losses and expenses which have been incurred as a result of the defendant's use of excessive force and/or negligence. They are awarded for such things as the cost of reasonable and necessary medical care and lost earnings. Noneconomic damages are monies awarded as compensation for non-monetary losses and injuries which the plaintiff's decedent has suffered as a result of the defendant's use of excessive force and/or negligence. They are awarded for such things as physical pain and suffering and the destruction of the ability to enjoy life's pleasures.

**Wrongful Death Damages**

We have a statute that governs damages in cases such as this where there is a death. It allows for just damages which includes:

**Economic damages of** :

1) the reasonable and necessary medical and funeral expenses and        2) the value of the decedent's lost earning capacity less deductions        for his necessary

living expenses taking into consideration that a    present cash payment will be made and

**Noneconomic damages of:**

3) compensation for the destruction of the decedent's capacity to    carry on and enjoy life's activities in a way that he would have done   had he lived and,

4) compensation for the death itself, or

5) pain and suffering.

I will now instruct you on economic damages.

**1. Reasonable and Necessary Medical and Funeral Expenses**

You may award damages for the reasonable and necessary medical, funeral and burial expenses. The plaintiff is entitled to recover the reasonable value of medical care and expenses incurred for the treatment of injuries sustained by the decedent as a result of the defendant's use of excessive force and/or negligence. The plaintiff must prove that the expenses he claims were reasonably necessary and legally caused by the defendant's use of excessive force and/or negligence.

**2. Destruction of Earning Capacity**

The destruction of earning capacity, that is, the capacity to carry on the particular activity of earning money, may be compensated. First, we address the probable net earnings, in the ordinary sense of that phrase, during the decedent's probable lifetime.

In measuring the compensation for the destruction of Mr. Vega Colon's earning capacity over his probable lifetime, it is proper for you to consider the salary or wages Mr. Vega Colon had been earning before the injury which caused his death. This is not conclusive evidence; yet, it is evidence of the value of his earning capacity. It is likewise proper for you to consider his general experience as

a wage earner and his qualifications for conducting a gainful occupation. Necessarily, the damages would be limited to that period of time which you find would have been Mr. Vega Colon 's length of life had he not died.

Next, you should understand that the probable income taxes must be deducted from his probable lifetime earnings to get any fair or proper basis for assessing reasonable compensation for the loss caused by the destruction of his earning capacity. For all practical purposes, the only usable earnings are net earnings after payment of such taxes.

Next, the probable cost of future personal living expenses must also be deducted from an award of reasonable compensation for the total destruction of his earning capacity. The phrase "personal living expenses" refers to those personal expenses that would have been reasonably necessary for him to spend to maintain his lifestyle in order to keep himself in such a condition of health and well-being that he could enjoy life's activities before his/her death.

Accordingly, in determining the loss to the plaintiff, you must subtract probable income taxes and necessary personal living expenses.

Now I will instruct you on noneconomic damages.

### 3. Destruction of Capacity to Enjoy Life's Activities

Damages are also allowed for the destruction of Mr. Vega Colon 's capacity to enjoy life's activities. Evidence has been presented as to those incidents of life that Mr. Vega Colon enjoyed, including family, work, sports, recreation and other aspects of life. You may consider those areas in connection with this claim and award damages for this loss.

### 4. Compensation for the Death Itself

The rule is that insofar as money can do it, the plaintiff may be awarded fair, just and reasonable compensation for the loss of life. As in the other categories of damages, there is no precise mathematical formula for a jury to apply.

### 5. Pain and Suffering

A decedent who is injured by the use of excessive force and/or negligence of another is entitled to be compensated for all physical pain and suffering, mental and emotional suffering, loss of the ability to enjoy life's pleasures, and permanent impairment or loss of function that he proves by a fair preponderance of the evidence to have been proximately caused by the defendant's use of excessive force and/or negligence. As far as money can compensate the decedent for such injuries and their consequences, you must award a fair, just, and reasonable sum. You simply have to use your own good judgment in awarding damages in this category. You should consider the nature and duration of any pain and suffering that you find.

A decedent who is injured by the use of excessive force and/or negligence of another is entitled to be compensated for mental suffering caused by the defendant's use of excessive force and/or negligence for the results which proximately flow from it in the same manner as he is for physical suffering.

You should consider, as a separate category for awarding damages in this case, the length of time the decedent was, or will probably be, disabled from engaging in activities which he enjoys.

If you find that it is reasonably probable that he has suffered permanent physical harm, loss of function or disfigurement, the decedent is entitled to be compensated for that category of injury. Your award should be in accordance with the nature and extent of such physical impairment, loss of function or disfigurement and the length of time he is reasonably

expected to endure its negative consequences.

Authority: Connecticut Judicial Branch Civil Jury Instructions 3.4-7, Damages - Wrongful Death and 3.4-1  Damages – General.

## PER DEFENDANT

## BURDEN OF PROOF

I shall shortly instruct you on the elements of Plaintiff's claims. Plaintiff has the burden of proving each and every element of each of his claims by a preponderance of the evidence. The Defendants do not have to present evidence to disprove Plaintiff's claims.

All this really means is that if the Plaintiff is trying to prove an act to you, he must show that the act is more likely true than not true. "Preponderance of evidence" also means "the greater weight of the credible evidence." By "credible evidence," the law simply refers to the evidence which you find worthy of belief. By "weight of the evidence," the law refers not, for example to the number of witnesses or exhibits, but rather, to the quality of the evidence on one side or the other.

In order for the party with the burden of proof to prevail on a particular claim, your consideration of all the credible evidence must tend to persuade you to believe what that party claims. If after considering all the evidence, you find that it weighs in favor of that party then that party has sustained his burden of proof and you must render a verdict in his favor. If, however, the evidence weighs in favor of the other party, or even if, in your mind, the evidence is evenly balanced between the two sides, then the party with the burden of proof has failed to sustain his burden of proof and your finding must be for the other party. To put it differently, if you were to put

all of a plaintiff's evidence on one side of the scale, and a defendant's evidence on the other side of the scale, the plaintiff would have to make the scales tip somewhat in his favor. If he fails to meet this burden, the verdict must be for the defendant.

In evaluating whether a party has carried the burden of proof by a preponderance of the evidence, your conclusion cannot be based on mere speculation or conjecture. You are permitted, however, to draw reasonable inferences from the facts that you find have been proved. Inferences are deductions or conclusions which reason and common sense lead you to draw form such facts.

Authority: *Jeffrey Bragg v. Andrea D'Agostino*, Doc. No. 3:06cv1757 (WIG) (U.S.D.C., March 2011).

## SECTION 1983 CLAIM FOR USE OF EXCESSIVE FORCE AND VIOLATION OF THE CONNECTICUT CONSTITUTION

Plaintiff raises claims under Title 42 United States Code, Section 1983, often referred to simply as "Section 1983," and the Connecticut constitution. The elements of a Section 1983 claim and a claim under the Connecticut constitution are equivalent, therefore they will have the same instruction.[2] Section 1983 permits a person to seek money damages against anyone who, under the authority of state law, deprives that person of rights protected by the Constitution or laws of the United States. The Plaintiff claims that Defendant violated his constitutional right not to be subjected to the use of excessive force by a police officer.

In order to prove this claim, the plaintiff must prove:

1. that the defendant was acting under color of state law,

2. that the defendant engaged in actions that deprived the plaintiff of (his/her) constitutional right not to be subjected to use of excessive force, and

3. that the defendant's acts were a proximate cause of the injuries or losses claimed by the plaintiff.

---

[2] "The elements of claims under 42 U.S.C. § 1983 are likely equivalent to those for claims of civil damages for violations of the Connecticut constitution, as recognized by Binette v. Sabo, 244 Conn. 23, 710 A.2d 305 (1998), and for violations of the fourth amendment to the United States constitution, as recognized by Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). A number of federal district court decisions have found that the civil claims recognized by Binette and Bivens have the same elements. See Milardo v. Middletown, United States District Court, Docket No. 3:06 CV 01 0712009 (D. Conn. March 25, 2009) and cases cited therein. Several federal circuit courts have reached the same conclusion for civil claims pursuant to Bivens and 42 U.S.C. § 1983. See Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987); Winterland Concessions Co. v. Trela, 735 F.2d 257, 262 (7th Cir. 1984) ("We assume for a moment that the pleading requirements are identical . . . and that to state a claim under either, [the plaintiff] must allege both that he has been deprived of a right secured by the Constitution, and that the deprivation occurred under color of law."); Paton v. La Prade, 524 F.2d 862, 871 (3d Cir. 1975)." Connecticut Judicial Branch Civil Jury Instructions 5.1-1, Use of Excessive Force (Violation of 42 U.S.C. § 1983)

The first element, acting under color of state law, is not in dispute. Police officers get their authority under state law, so they are acting under color of state law when they act in their capacity as police officers.

The second element requires more explanation. The Fourth Amendment to the United States Constitution guarantees people the right not to be unreasonably seized by government officials, including police officers. This right is violated if a police officer subjects a person to excessive force. The right of a police officer to stop and arrest a person necessarily carries with it the right to use some degree of physical coercion or contact to effect the arrest. This does not mean, however, that the officer may use excessive amounts of force.

Force is excessive, and use of such force constitutes a violation of a person's rights under the fourth amendment, if the amount of force used would not be considered reasonable by a reasonably competent police officer in the circumstances presented at the exact time that the police officer used such force. The test is not whether the defendant thought his use of force was reasonable, but rather it is an objective standard: would a reasonably competent police officer consider the use of such amount of force under the circumstances at the time the force was used?

Applying this standard requires careful attention to the facts and circumstances of the case, including the severity of the crime at issue, whether the plaintiff posed an immediate threat to the safety of the officer or others, and whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20-20 vision of hindsight. Not every push or shove, even if it may later seem unnecessary in the peace of the courtroom, violates the fourth amendment. Your assessment of

reasonableness must allow for the fact that the police officer may have had to make a split-second judgment concerning the amount of force that was necessary in circumstances that were tense, uncertain and rapidly evolving.

The issue is whether the force used was reasonable, not the officer's intent or frame of mind. An officer's bad intentions or hostile frame of mind toward the plaintiff will not make a fourth amendment violation out of the use of force that is a reasonable amount of force under the circumstances. An officer's good intentions will not make constitutional what is, in fact, an unreasonable use of force.

In this case, the plaintiff claims that the officer used deadly force, that is, that he fired his gun at the plaintiff. The standard is that a police officer may use deadly force in two circumstances. The first is if he reasonably believes that such force is necessary to defend himself and/or others from the actual use or imminent use of deadly physical force. The second is to prevent the escape of a felony suspect if the officer has probable cause to believe that the suspect poses a threat of serious physical harm either to the officer or to others.

It is these constitutional standards, rather than the text of any statute or any departmental regulation, that should govern your consideration of this claim.

You must determine what the circumstances were, as they presented themselves to the defendant, at the time that he acted. You are to determine what the situation was at the time the defendant used force, and whether a reasonably competent police officer would not have used such force under the circumstances at the time. In determining whether the force used to affect a particular seizure is reasonable, you must examine the facts and circumstances of this particular case, including the severity of the crime at issue, whether the plaintiff posed an immediate

threat to the safety of the defendant or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.[3]

A claim that a law enforcement officer used excessive force during a stop or arrest is analyzed under the Fourth Amendment. The touchstone of the Fourth Amendment is reasonableness, as measured in objective terms. So the question in a case like this one is whether the force deployed was justified from the perspective of a reasonable officer on the scene, taking due account of both the individual interests and the governmental interests at stake.

 That inquiry into the reasonableness of police force requires analyzing the "totality of the circumstances." There is no "easy-to-apply legal test" or "on/off switch" in this context. Deciding whether a use of force was objectively reasonable demands careful attention to the facts and circumstances relating to the incident, as then known to the officer. For example, the severity of the crime prompting the stop can carry weight in the analysis. So too can actions the officer took during the stop, such as giving warnings or otherwise trying to control the encounter. And the stopped person's conduct is always relevant because it indicates the nature and level of the threat he poses, either to the officer or to others.

Most notable here, the totality of the circumstance inquiry into a use of force has no time limit. Of course, the situation at the precise time of the shooting will often be what matters most; it is, after all, the officer's choice in that moment that is under review. But earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones.

---

[3] *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996).

The use of force is unreasonable unless the officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or to others.[4]

Probable cause exists when the facts and circumstances within the knowledge of the person making the determination are sufficient to warrant a reasonable person to believe that a particular fact or event has occurred. Probable cause does not require absolute certainty or proof beyond a reasonable doubt but rather a reasonable basis for belief.

The third element that the plaintiff must establish is that the defendant's use of force was a proximate cause of the injuries or losses that the plaintiff sustained. An injury or loss is proximately caused by an action if that action was a substantial factor in bringing about the injury or the loss. The injury or loss must also be either a direct result or a reasonably probable consequence of the act of the defendant. In other words, the plaintiff must satisfy you that his injuries or losses were the natural and probable consequence of the defendant's acts, and that the defendant ought to have foreseen that injury or loss was likely to result from such acts.

Authority: Connecticut Judicial Branch Civil Jury Instructions 5.1-1, Use of Excessive Force (Violation of 42 U.S.C. § 1983); *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (l989); *Barnes v. Felix*, 605 U.S. 73, 79-80 (2025); *Barlow v. Liberty Maritime Corp.*, 746 F.3d 518 (2d Cir. 2014); U.S. Constitution, amend. IV; 42 U.S.C. § 1983.

---

[4] *Rasanen v. Doe*, 723 F.3d 325,334 (2d Cir. 2013)

## A. State Of Mind

I instruct you that, to establish a claim under section 1983, Plaintiff must show that Defendants acted intentionally or recklessly. If you find that the acts of Defendant were merely negligent, then, even if you find that Plaintiff was injured as a result of those acts, you must return a verdict for Defendant.[5]

---

[5] 4 L.Sand, et.al. Modern Federal Jury Instructions -- Instruction 87-75.

## BATTERY

The plaintiff alleges that the conduct of the defendant constituted a battery. A battery is a harmful or offensive contact with the person of another.

A harmful contact is one that causes physical impairment of the condition of another's body, physical pain, or illness. An offensive contact is one that offends a reasonable sense of personal dignity.

The contact must be the direct and immediate consequence of a force exerted by the defendant intentionally.

To establish a claim for assault and battery, plaintiff must prove that . . . the application of force or violence was unlawful.[6]

Under Connecticut law, a police officer is justified in using physical force upon another person when and to the extent that he or she reasonably believes such use to be necessary to: defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.[7]

As to the plaintiff's claims for assault and battery, to establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to him and that the application of force or violence was unlawful.[8] In this context the essential elements of a Fourth Amendment excessive-force claim and a state-law assault-and-battery claim are substantially identical.[9]

---

[6] *Conroy v. Caron*, 275 F. Supp. 3d 328, 356 (D. Conn. 2017) (quoting *Odom v. Matteo*, 772 F.Supp.2d 377 (D. Conn. 2011) (quoting *Williams v. Lopes*, 64 F. Supp. 2d 37, 47 (D. Conn. 1999) (citing *Moriarty v. Lippe*, 162 Conn. 371, 294 A.2d 326, 335 (Conn. 1972)))).

[7] Conn. Gen. Stat. Ann. § 53a-22.

[8] *Evans v. Barone*, No. 3:22-CV-74 (SALM), 2022 U.S. Dist. LEXIS 75448, 2022 WL 1229020, at *3 (D. Conn. Apr. 26, 2022) (quoting *Williams v. Lopes*, 64 F. Supp. 2d 37, 47 (D. Conn. 1999)).

[9] *Cook v. Phillips*, No. 3:19CV1982 (MPS), 2023 U.S. Dist. LEXIS 8361, 2023 WL 257899, at *7 (D. Conn. Jan. 18, 2023) (citing *State v. Smith*, 73 Conn. App. 173, 807 A.2d 500, 515 (Conn. Ct. App. 2002)) ("Connecticut appellate courts have interpreted C.G.S. § 53a-22(b) as permitting a police officer's use of force essentially to the same extent as permitted by the Fourth Amendment."); see also *Rosa v. Cook*, No. 3:22-CV-703 (SALM), 2022 U.S.

**A. Excessive Force**

Force is excessive, and use of such force constitutes a violation of a person's rights under the fourth amendment, if the amount of force used would not be considered reasonable by a reasonably competent police officer in the circumstances presented at the exact time that the police officer used such force. The test is not whether the defendant thought (his/her) use of force was reasonable, but rather it is an objective standard: would a reasonably competent police officer consider the use of such amount of force under the circumstances at the time the force was used?

Applying this standard requires careful attention to the facts and circumstances of the case, including the severity of the crime at issue, whether the plaintiff posed an immediate threat to the safety of the officer or others, and whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20-20 vision of hindsight. Not every push or shove, even if it may later seem unnecessary in the peace of the courtroom, violates the fourth amendment. Your assessment of reasonableness must allow for the fact that the police officer may have had to make a split-second judgment concerning the amount of force that was necessary in circumstances that were tense, uncertain and rapidly evolving.

The issue is whether the force used was reasonable, not the officer's intent or frame of mind. An officer's bad intentions or hostile frame of mind toward the plaintiff will not make a fourth amendment violation out of the use of force that is a reasonable amount of force under the circumstances. An officer's good intentions will not make constitutional what is, in fact, an unreasonable use of force.

---

Dist. LEXIS 134055, 2022 WL 2981574, at *12 (D. Conn. Dec. 5, 2022) (quoting *Outlaw v. City of Hartford*, No. 3:07-CV-1769 (GWC), 2015 WL 13646918, at *1 (D. Conn. May 5, 2015).

In this case, the plaintiff claims that the officer used deadly force, that is, that he fired his gun at the plaintiff. The standard is that a police officer may use deadly force in two circumstances. The first is if he reasonably believes that such force is necessary to defend himself and/or others from the actual use or imminent use of deadly physical force. The second is to prevent the escape of a felony suspect if the officer has probable cause to believe that the suspect poses a threat of serious physical harm either to the officer or to others.

Authority: Connecticut Judicial Branch Civil Jury Instructions 5.1-1, Use of Excessive Force (Violation of 42 U.S.C. § 1983); *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (l989); U.S. Constitution, amend. IV; 42 U.S.C. § 1983.

## NEGLIGENCE

Negligence is the violation of a legal duty which one person owes to another.[10] In order to maintain an action for negligence, a plaintiff must prove a defendant owed that plaintiff a duty, the defendant breached that duty, causing the plaintiff to suffer damages. In short, negligence is the failure to use reasonable care under the circumstances, and reasonable care is the care that a reasonably prudent person would use in the same circumstances.[11]

You, the jury, must determine whether Defendant owed Plaintiff a duty of care, and if so, whether Defendant breached his duty of reasonable care by using deadly force. Further, if that duty of care was breached, then you must determine if Plaintiff suffered actual injury. If you the jury conclude that an actual injury occurred, you must then determine whether the breach of duty was the proximate cause of the injuries that Plaintiff claims to have incurred. I will further instruct you below on "duty of care," "reasonable care," "actual injury" and "proximate cause."

### A. Duty – foreseeability

A duty to use care exists when a reasonable person, knowing what the Defendant here either knew or should have known at the time of the challenged conduct, would foresee that harm of the same general nature as that which occurred here was likely to result from that conduct. If harm of the same general nature as that which occurred here was foreseeable, it does not matter if the manner in which the harm that actually occurred was unusual, bizarre or unforeseeable.

---

[10] Phaneuf v. Berselli, 119 Conn. App. 330, 336, 988 A.2d 344 (2010).
[11] Hoelter v. Mohawk Services, Inc., 170 Conn. 495, 501 (1976).

Authority: Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375 (1982); Pisel v. Stamford Hospital, 180 Conn. 314, 332-33 (1980); Orlo v. Connecticut Co., 128 Conn. 231, 237 (1941).

## A. Reasonable care

In determining the care that a reasonably prudent person would use in the same circumstances, you should consider all of the circumstances which were known or should have been known to the defendant at the time of the conduct in question. Whether care is reasonable depends upon the dangers that a reasonable person would perceive in those circumstances. It is common sense that the more dangerous the circumstances, the greater the care that ought to be exercised.

Authority: Galligan v. Blais, 170 Conn. 73, 77 (1976); Pleasure Beach Park Co. v. Bridgeport Dredge& Dock Co., 116 Conn. 496, 503 (1933); Geoghegan v. G. Fox & Co., 104 Conn. 129, 134 (1926).

## B. Actual injury

In order to recover money damages, Plaintiff must prove that they suffered an actual injury. That injury can be any one or more of the types about which I will instruct you in the damages portion of my charge. Unless Plaintiff proves an actual injury caused by Defendant's negligence, you cannot find for Plaintiff and award damages.

Authority: *Right v. Breen*, 277 Conn. 364, 377 (2006).

## C. Proximate Cause

Plaintiff must prove that any injury or harm for which he seeks compensation from Defendant was caused by Defendant.

The first issue for your consideration is, "Was the plaintiff injured or harmed?" If the answer is no, you will render a verdict for Defendant. If the answer is yes, you will proceed to the second issue, which is "Were such injuries or harm caused by the negligence of the defendant?" This is called "proximate cause."

Negligence is a proximate cause of an injury if it was a substantial factor in bringing the injury or harm about. In other words, if Defendant's negligence contributed materially and not just in a trivial or inconsequential manner to the production of the injury or harm, then their negligence was a substantial factor. If you find that Defendants negligence was not a substantial factor in bringing about the injury or harm suffered by Plaintiff, you will render a verdict in favor of Defendant. However, if you find that Defendant's negligence was a substantial factor in causing injury or harm to Plaintiff, you will consider the allocation of liability and assessment of damages.

> Authority: *Winn v. Posades*, 281 Conn. 50, 56 (2007) ("[t]he test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct"); *Shaughnessy v. Morrison*, 116 Conn. 661, 666 (1933) ("[a]n act or omission can hardly be regarded as the cause of an event which would have happened if the act or omission had not occurred"); see also Pilon v. Alderman, 112 Conn. 300, 301-302 (1930) ("The meaning of the term 'substantial factor' is so clear as to need no expository definition . . . . Indeed, it is doubtful if the expression is susceptible of definition more understandable than the simple and familiar words it employs."); *Phelps v. Lankes*, 74 Conn. App. 597, 606-607 (2003) (same).

## DAMAGES

In this case, Plaintiff seeks to recover money damages for his alleged losses. You should not consider the question of damages unless you have determined, first, that at least one Defendant violated the constitutional rights of Plaintiff as I have instructed you on these causes of action. You must not speculate or guess as to damages. It is Plaintiff's burden to prove each element, item and amount of damages, not Defendants' burden to disprove them.[12]

I will address our general rules regarding damages and then I will discuss the specific laws relating to a wrongful death case.

As you know, this case is captioned *Anthony Colon, as administrator of the Estate of Anthony Vega-Cruz v. Layau Eulizier*.  Mr. Colon, while labeled the plaintiff, is the administrator of the decedent 's estate; the estate is the actual plaintiff in this case. Any damages awarded in this case would go to the estate and not simply to Mr. Colon.

### A. The General Rules of Damages

Insofar as money can do it, a plaintiff is to receive fair, just and reasonable compensation for all injuries and losses, past and future, which are legally caused by the defendant's proven use of excessive force and/or negligence. Under this rule, the purpose of an award of damages is not to punish or penalize the defendant for his use of excessive force and/or negligence but to compensate the plaintiff, and in this case the estate, for the decedent's resulting injuries and losses.

Our laws impose certain rules to govern the award of damages. The plaintiff has the burden of proving his entitlement to recover damages by a fair preponderance

---

[12] Adapted from Jury Charge by Cabranes, J. in the case Albert, et al. v. DePinto, et al., Civ. No. H82-511(JAC).

of the evidence. The plaintiff must prove both the nature and extent of each particular loss or injury for which he seeks to recover damages and that the loss or injury in question was legally caused by the defendant's use of excessive force and/or negligence. You may not guess or speculate as to the nature or extent of the plaintiff's decedent's losses or injuries. Your decision must be based on reasonable probabilities in light of the evidence presented at trial.

Once the plaintiff has proved the nature and extent of the decedent's compensable injuries and losses, it becomes your job to determine what is fair, just and reasonable compensation for those injuries and losses. Some determinations require a mathematical calculation; others involve the use of human experience and the application of sound common sense.

In a personal injury action, which includes a wrongful death action, there are two general types of damages with which you must be concerned: economic and noneconomic damages. Economic damages are monies awarded as compensation for monetary losses and expenses which have been incurred as a result of the defendant's use of excessive force and/or negligence. They are awarded for such things as the cost of reasonable and necessary medical care and lost earnings. Noneconomic damages are monies awarded as compensation for non-monetary losses and injuries which the plaintiff's decedent has suffered as a result of the defendant's use of excessive force and/or negligence. They are awarded for such things as physical pain and suffering and the destruction of the ability to enjoy life's pleasures.

B. **Wrongful Death Damages**

We have a statute that governs damages in cases such as this where there is a death. It allows for just damages which includes:

**Economic damages of** :

1) the reasonable and necessary medical and funeral expenses and

2) the value of the decedent's lost earning capacity less deductions for his necessary living expenses taking into consideration that a present cash payment will be made and

**Noneconomic damages of:**

3) compensation for the destruction of the decedent's capacity to carry on and enjoy life's activities in a way that he would have done had he lived and,

4) compensation for the death itself, or

5) pain and suffering.

I will now instruct you on economic damages.

**1. Reasonable and Necessary Medical and Funeral Expenses**

You may award damages for the reasonable and necessary medical, funeral and burial expenses. The plaintiff is entitled to recover the reasonable value of medical care and expenses incurred for the treatment of injuries sustained by the decedent as a result of the defendant's use of excessive force and/or negligence. The plaintiff must prove that the expenses he claims were reasonably necessary and legally caused by the defendant's use of excessive force and/or negligence.

**2. Destruction of Earning Capacity**

The destruction of earning capacity, that is, the capacity to carry on the particular activity of earning money, may be compensated. First, we address the

probable net earnings, in the ordinary sense of that phrase, during the decedent's probable lifetime.

In measuring the compensation for the destruction of Mr. Vega Colon's earning capacity over his probable lifetime, it is proper for you to consider the salary or wages Mr. Vega Colon had been earning before the injury which caused his death. This is not conclusive evidence; yet, it is evidence of the value of his earning capacity. It is likewise proper for you to consider his general experience as a wage earner and his qualifications for conducting a gainful occupation. Necessarily, the damages would be limited to that period of time which you find would have been Mr. Vega Colon 's length of life had he not died.

Next, you should understand that the probable income taxes must be deducted from his probable lifetime earnings to get any fair or proper basis for assessing reasonable compensation for the loss caused by the destruction of his earning capacity. For all practical purposes, the only usable earnings are net earnings after payment of such taxes.

Next, the probable cost of future personal living expenses must also be deducted from an award of reasonable compensation for the total destruction of his earning capacity. The phrase "personal living expenses" refers to those personal expenses that would have been reasonably necessary for him to spend to maintain his lifestyle in order to keep himself in such a condition of health and well-being that he could enjoy life's activities before his/her death.

Accordingly, in determining the loss to the plaintiff, you must subtract probable income taxes and necessary personal living expenses.

Now I will instruct you on noneconomic damages.

### 3. Destruction of Capacity to Enjoy Life's Activities

Damages are also allowed for the destruction of Mr. Vega Colon 's capacity to enjoy life's activities. Evidence has been presented as to those incidents of life that Mr. Vega Colon enjoyed, including family, work, sports, recreation and other aspects of life. You may consider those areas in connection with this claim and award damages for this loss.

### 4. Compensation for the Death Itself

The rule is that insofar as money can do it, the plaintiff may be awarded fair, just and reasonable compensation for the loss of life. As in the other categories of damages, there is no precise mathematical formula for a jury to apply.

### 5. Pain and Suffering

A decedent who is injured by the use of excessive force and/or negligence of another is entitled to be compensated for all  physical pain and suffering, mental and emotional suffering, loss of the ability to enjoy life's  pleasures, and permanent impairment or loss of function that he proves by a fair  preponderance of the evidence to have been proximately caused by the defendant's use of excessive force and/or negligence.  As far as money can compensate the decedent for such injuries and their consequences, you must  award a fair, just, and reasonable sum.  You simply have to use your own good judgment in awarding damages in this category.  You should consider the nature and duration of any pain and suffering that you find.

A decedent who is injured by the use of excessive force and/or negligence of another is entitled to be compensated for mental suffering caused by the defendant's use of excessive force and/or negligence for the results which proximately flow from it in the same manner as he is for physical suffering.

You should consider, as a separate category for awarding damages in this case, the length of time the decedent was, or will probably be, disabled from engaging in activities which he enjoys.

If you find that it is reasonably probable that he has suffered permanent physical harm, loss of function or disfigurement, the decedent is entitled to be compensated for that category of injury. Your award should be in accordance with the nature and extent of such physical impairment, loss of function or disfigurement and the length of time he is reasonably

expected to endure its negative consequences.

Authority: Connecticut Judicial Branch Civil Jury Instructions 3.4-7, Damages - Wrongful Death and 3.4-1 Damages – General.

## A. Compensatory Damages

Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not Defendants should be held liable.

If you return a verdict for Plaintiff, then you must consider the issue of actual damages.

Only if you return a verdict for Plaintiff, must you award him such sum of money as you believe will fairly and justly compensate him for any loss you believe Plaintiff actually sustained as a direct consequence of the conduct of Defendants.

Compensatory damages seek to make a plaintiff whole—that is, to compensate him for the damage that he suffered. Furthermore, compensatory damages are not limited merely to expenses that Plaintiff may have borne. A prevailing plaintiff is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he or she has suffered

because of a defendant's conduct. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant. I remind you that you may award actual, or compensatory, damages only for those injuries which you find Plaintiff has proven to you by a preponderance of the evidence to have been the direct result of Defendants' allegedly wrongful conduct. That is, you may not simply award actual damages for any injury suffered by Plaintiff. The damages that you award must be fair and reasonable, neither inadequate nor excessive, and must not be based on speculation or sympathy. You should not award compensatory damages for speculative injuries, but only for those injuries that Plaintiff has actually suffered or which they are reasonably likely to suffer in the near future.

Your determination of damages must be based on the evidence presented at trial, and only on that evidence. In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. A plaintiff is not entitled to damages based solely on the subjective importance of the constitutional right allegedly violated. In other words, violation of a constitutional right, in and of itself, does not entitle a plaintiff to an award of damages. Your award, if any, should be based upon proof of actual injuries, not a demonstrated infringement of an abstract constitutional right. In all instances, you are to use sound discretion in fixing an

award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.[13]

## B.  No Double Recovery

You may only compensate Plaintiff for a violation of their constitutional rights if you have found their claims of a constitutional violation to have been proven by a preponderance of the evidence. If you have found that Plaintiff has proven only the state law claims based upon intentional torts, you may not compensate Plaintiff for violations of his constitutional rights. Likewise, if you find that Plaintiff has only proven a violation of their constitutional rights, but have not proved any intentional tort, you may compensate Plaintiff only for a violation of their federal constitutional rights and you may not compensate them on their state law claims. However, if you find for Plaintiff on both the constitutional and state law intentional tort, you are instructed that the harm, if any, Plaintiff has suffered for any of the alleged wrongs committed by Defendants is the same. That is to say, all of each of Plaintiff's damages are identical, no matter what the legal basis of recovery might be. In making your award of damages, if any, you should decide upon one award of damages which encompasses all wrongs to Plaintiff.[14]

---

[13] *Story Parchment Co. v. Paterson Parchment Paper Co*., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); *Kinty v. United Mine Workers of America*, 544 F.2d 706 (4th Cir. 1976), cert. denied, 429 U.S. 1093 (1977); *Northwestern National Casualty Co. v. McNulty*, 307 F.2d 432 (5th Cir. 1962); *U.C. Castings Co. v. Knight*, 754 F.2d 1363 (7th Cir. 1985); *Luria Brothers & Co., Inc. v. Pielet Brothers Scrap Iron Metal, Inc*., 600 F.2d 103 (7th Cir. 1979); Connecticut Law of Torts, 3d Ed. § 174; *Markey v. Santangelo*, 195 Conn. 76, 485 A.2d 1305 (1985); *Abraham v. Gendlin,* 84 U.S. App. D.C. 307, 172 F.2d 881 (D.C. Cir. 1949); *Brandon v. Capitol Transit Co*., 71 A.2d 621 (D.C. App. 1950); *Memphis Community School District v. Stachura*, 477 U.S. 299 (1986); *Carey v. Piphus*, 435 U.S. 247 (1978); Wayne C. Beyer, Police Misconduct: Principles Governing Money Damages and Other Relief Under 42 U.S.C. § 1983, 32 TORT & INSURANCE LAW JOURNAL 154, 157-59 (ABA 1996).

[14] *Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996); *Lewis v. Kendrick*, 944 F.2d 949, 954 (1st. Cir. 1991); *Quezada v. County of Bernalillo*, 944 F.2d 710, 723 (10th Cir. 1991); *Gilmere v. City of Atlanta*, 864 F.2d 734, 740-41 (11th Cir.), cert. denied, 493 U.S. 817 (1989); *Clapplier v. Flynn*, 605 F.2d 519, 529 (10th Cir. 1979); *Dellums v. Powell*, 566 F.2d 216, 225-228 (D.C. Cir. 1977).

## NOTICE REGARDING DETERMINATION OF QUALIFIED IMMUNITY

In conjunction with these proposed instructions to the jury, the defendant hereby provides the following notice concerning his affirmative defense of qualified immunity:

The question of whether the Defendants are entitled to qualified immunity should not be submitted to the jury, as it is a legal determination to be made by the Court. *See Stephenson v. Doe*, 332 F.3d 68, 80-81 (2d Cir. 2003) (recognizing that qualified immunity is a legal decision and "[j]uries are hardly suited to make decisions that require an analysis of legal concepts and an understanding of the inevitable variability in the application of highly generalized legal principles"); *see also Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) ("The ultimate legal determination whether, on the facts found, a reasonable officer should have known he acted unlawfully is a question of law better left for the court to decide."). If the jury returns a verdict in favor of Plaintiff, the issue of whether qualified immunity shields the Defendants from liability is a question of law that must be decided by the Court, not the jury. However, if there are disputed issues of material fact as to the issue of qualified immunity, the jury should decide those factual disputes and the Court should then make the ultimate legal determination as to whether qualified immunity attaches on those facts. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court."); *see also Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018) ("After the factfinder's decision as to what the facts were that the [correctional official] faced or perceived, the court then may

make the ultimate legal determination of whether qualified immunity attached.") (internal citations and quotations omitted).

      If such a factual dispute arises as to the issue of qualified immunity, the defendant will seek to submit special interrogatories to the jury regarding the factual issues and then let the Court make the ultimate legal determination as to qualified immunity. *See Stephenson*, 332 F.3d at 81 (noting that the use of special interrogatories resolves the difficulty of the jury deciding the material facts while also permitting the court to make the ultimate legal determination on qualified immunity); *see also Outlaw*, 884 F.3d at 368 (explaining that the jury can make the determination as to the disputed material facts regarding qualified immunity through special interrogatories).

      Plaintiff's Objection- Qualified immunity is a matter of law to be determined by the Court and not by the jury and the jury should not be instructed as to the law regarding qualified immunity.

      e.    <u>Proposed Verdict Form</u>

## **PLAINTIFFS' PROPOSED VERDICT FORM**

We, the jury in the above-entitled action, find the following:

## **QUESTION 1:**

      Did Layau Eulizier use excessive force against Anthony Vega-Cruz?

        _____ YES         _____ NO

*Please proceed to the next question.*

**QUESTION 2**:

Was Layau Eulizier negligent?

_____ YES          _____ NO

*If you answered "yes" to Question 2, proceed to Question 3.*

*If you answered "no" to Question 2, do not answer Questions 3-6.*

*If you answered "yes" to Question 1 and "no" to Question 2, please proceed to Question 7.*

*If you answered "no" to Question 1 and "no" to Question 2, sign and return this form.*

**QUESTION 3**:

Was the negligence of Layau Eulizier a cause of Anthony Vega-Cruz's death?

_____ YES          _____ NO

*If you answered "yes" to Question 3, proceed to Question 4.*

*If you answered "no" to Question 3, do not answer Questions 4-6.*

**QUESTION 4**:

Was Anthony Vega-Cruz negligent?

_____ YES          _____ NO

*If you answered "yes" to Question 4, proceed to Question 5.*

*If you answered "no" to Question 4, do not answer Questions 5-6.*

58

**QUESTION 5**:

Was Anthony Vega-Cruz's negligence a cause of his death?

_____ YES          _____ NO


*If you answered "yes" to Question 5, proceed to Question 6.*
*If you answered "no" to Question 5, do not answer Question 6.*


**QUESTION 6**:

Assuming that 100% represents the total negligence of all individuals, what percentage of negligence do you assign to the following:


Layau Eulizier                              _____%

Anthony Vega-Cruz                    _____%

Total                                        100%

*Proceed to the next question.*


**QUESTION 7:**

We the jury find in favor of the plaintiff ANTHONY COLON, as administrator of the Estate of Anthony Vega Cruz and against the defendant Layau Eulizier and award damages as follows:

    (a)  Total economic damages:          $_____

    (b)  Total noneconomic damages        $_____

    (c)  Total damages awarded to plaintiff:    $_____

*Please sign and date the verdict form and return it to the Court.*

Date: _____    _____

Jury Foreperson

## DEFENDANT'S PROPOSED VERDICT FORM

*General Instructions*:  These interrogatories should be answered before you reach a verdict.  The foreperson should complete the answers in ink by circling or checking the correct answer.  The foreperson should also sign and date these answers.  Just as you must be unanimous in reaching your verdict, so must you also be unanimous in your answers to these interrogatories.

*Please Answer the Following Interrogatories*

**Liability**

**I.    *42 U.S.C. § 1983 – Excessive Force***

1.  Do you find that Officer Eulizier used such force as was reasonably necessary to defend himself and/or others from the actual use or imminent use of deadly physical force or inflict great bodily harm?

Yes_____    No_____

**(If you answered "YES" to this interrogatory, please proceed to Section II; if you answered "NO", please proceed to Question 2.)**

2.  Do you find that Officer Eulizier's conduct was the proximate cause of injury to the Decedent?

Yes_____    No_____

**(If you answered "YES" to this interrogatory, please proceed to Question 3; if you answered "NO", please proceed to Section II.)**

3. Has Defendant Layau Eulizier proven, by a preponderance of the evidence, that he was justified to use physical force to defend himself or others against what he believed to be the use or imminent use of physical force or inflict great bodily harm in accordance with C.G.S. §§ 53a-19 and/or 53a-22?

Yes_____    No_____

**(If you answered "YES" to this interrogatory, please proceed to Section II; if you answered "NO" to this interrogatory, please proceed to Question 4.)**

4. Did the plaintiff prove that the actions of the defendant Layau Eulizier were willful or wanton?

Yes_____    No_____

**(Please proceed to Section II.)**

**II.    *State Law Claim: Battery***

1. Do you find that the Plaintiff has proven by a preponderance of the evidence that Defendant Layau Eulizier acted intending to cause a harmful or offensive contact to the Decedent?

Yes_____    No_____

**(If you answered "YES", please proceed to Question 2; If you answered "NO"; please proceed to Section III.)**

2. Do you find that the Plaintiff proved a resulting harmful or offensive contact by Defendant Layau Eulizier?

Yes_____    No_____

**(If you answered "YES", please proceed to Question 3; If you answered "NO"; please proceed to Section III.)**

61

3.  Has Defendant Layau Eulizier proven, by a preponderance of the evidence, that he was justified to use physical force to defend himself or others against what he believed to be the use or imminent use of physical force or is about to inflict great bodily harm in accordance with C.G.S. §§ 53a-19 and/or 53a-22?

Yes_____          No_____

**(If you answered "YES", please proceed to Section III; If you answered "NO"; please proceed to Question 4.)**

4.  Did the plaintiff prove that the actions of the defendant Layau Eulizier were willful or wanton?

Yes_____          No_____

**(Please proceed to Section III.)**

### III.  *Negligence*

1.  Do you find that Defendant Layau Eulizier acted negligently to cause a harmful or offensive conduct with Decedent's person, resulting in Decedent's death?

Yes_____          No_____

**(If you answered "YES", please proceed to Question 2; if you answered "NO", please proceed to Section IV.)**

2.  Did the Plaintiff prove a harmful or offensive contact to Decedent by Defendant Layau Eulizier?

Yes_____          No_____

**(If you answered "YES", please proceed to Question 3; if you answered "NO", please proceed to Section IV.)**

3.  Has Defendant Layau Eulizier proven, by a preponderance of the evidence, that he was justified to use physical force to defend himself or others against what he believed to be the use or imminent use of physical force or inflict great bodily harm in accordance with C.G.S. §§ 53a-19 and/or 53a-22?

Yes_____          No_____

**(If your answer is "YES" the plaintiff IS NOT entitled to damages in Section IV below, based upon his Negligence claim. Please proceed to Section IV.)**

## IV.    *Damages*

You should consider the following questions only if you have found that Officer Eulizier committed any of the following:

Excessive force
Battery
Negligence

1.  Do you find that the plaintiff has proved actual damages suffered as the result of the defendants' wrongdoing?

Yes_____          No_____

2.  If you answered "YES" to the previous question, what amount of money in actual damages is fair and just to compensate this plaintiff for the injuries inflicted upon him by the defendants?

Economic Damages                _____

Non-economic Damages          _____

Total                                       _____

Date: _____          Foreperson (in ink): _____

63

12.   <u>COURTROOM TECHNOLOGY</u>

Plaintiff intends to connect a laptop to display exhibits and use the ELMO.


Respectfully submitted,


By: _ //S// _ *Eric Valenzuela*
Eric Valenzuela
(pro hac vice)
Law Offices of Dale K. Galipo
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Attorneys for the Plaintiff


DEFENDANT,
LAYAU EULIZIER

By:     */s/ Elliot B. Spector*
Elliot B. Spector (ct05278)
Jeffrey O. McDonald (ct28195)
Forrest A. Noirot (ct31754)
Hassett & George, P.C.
945 Hopmeadow Drive
Simsbury, CT 06070
Tel. No.: (860) 651-1333
Email: ebspector87@gmail.com
Email: jmcdonald@hgesq.com
Email: fnoirot@hgesq.com

64

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANTHONY COLON, as administrator of the Estate of Anthony Vega Cruz | : | 3:21-cv-00175-KAD |
| | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| LAYAU EULIZIER, | : | OCTOBER 31, 2025 |
| | : | |
| *Defendant* | | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the date first above a copy of the foregoing **JOINT TRIAL MEMORANDUM** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

//S//      *Eric Valenzuela*

Eric Valenzuela
(pro hac vice)
Law Offices of Dale K. Galipo
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Attorneys for the Plaintiff